David B. RICHARDSON, et
al., Plaintiffs,

v.

U.S. NEWS & WORLD REPORT, INC.,
et al., Defendants.

Civ. A. No. 85–2195.

United States District Court,
District of Columbia.

Nov. 26, 1985.

E. Roger Frisch, New York City, George A. Bangs and Joseph M. Butler, Rapid City, S.D., Raoul L. Carroll, Washington, D.C., for plaintiffs.

Nell Strachan, Venable, Baetjer & Howard, Lawrence Latto, Shea & Gardner, Washington, D.C., for defendants.

## MEMORANDUM ORDER

### (Dismissing Complaint as to Mercantile and Plan Committee Members)

BARRINGTON D. PARKER, District Judge.

Plaintiffs in this action are former employees of U.S. News and World Report magazine ("U.S. News") who retired or otherwise separated from the company in the year 1982.[1] They seek recovery from the magazine, several former members of its board of directors, an independent appraisal firm, the magazine's Profit-Sharing Plan ("Plan"), Mercantile-Safe Deposit and Trust Company ("Mercantile"), the Plan trustee, and current members of the Plan's management committee (Gretchen Langston, James Glassman, John Mashek and Neil Rice).

The gravamen of plaintiffs' amended complaint is that, by a pattern of concerted activity, the details of which need not be discussed here, these defendants, except for the Plan trustee and the Plan Committee members, caused plaintiffs' retirement benefits, as measured by U.S. News stock held by plaintiffs and by the Plan, to be undervalued. Such undervaluation allegedly became apparent in 1984, when U.S. News was sold to Mortimer Zuckerman for approximately $140 million.

This suit follows upon the heels of class-action litigation commenced in early 1984 by employees who during the years 1974–1981, left the employment of U.S. News. *Foltz, et al. v. U.S. News & World Report, Inc., et al.,* 613 F.Supp. 634. On June 14, 1985, this Court, on application of the *Foltz* plaintiffs, enjoined distribution of approximately $41.7 million[2] of the Plan assets, a sum deemed sufficient to satisfy any likely judgment awarded those plaintiffs. 613 F.Supp. 634 (D.D.C.1985). One month later, in response to a request for a temporary restraining order filed by the *Richardson* plaintiffs, which was treated as a motion for a preliminary injunction, an additional $4 million was held back, Order of July 15, 1985, in addition to the $41.7 million held back in *Foltz.* Shortly thereafter a portion of the remaining funds was distributed to current beneficiaries of the Plan.

The *Richardson* plaintiffs now charge that the Plan trustee, Mercantile, and the members of the Plan Committee, by approving the distribution, violated fiduciary duties imposed upon them by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Amended Complaint ¶¶ 5.01–5.15 (Counts 7–9).[3] Plaintiffs also allege that these defendants breached their fiduciary duties in approving the 1984 sale, whose terms included the diversion of $13 million of the proceeds to most of the director-defendants as consideration for "phantom" stock they held, and $10 million to an indemnification fund. Amended Complaint ¶¶ 5.14(b), (c).

Mercantile and the Plan Committee members have moved to dismiss the complaint as to them. Mercantile argues, first, that it is not a fiduciary within the meaning of ERISA; second, that claims alleged against it are premature; and third, that it was

---

**1.** Plaintiff Dorothy G. Haller is trustee of the estate of a former employee Ellis M. Haller, who retired in 1981.

**2.** The $41.7 million included an amount equal to $29 million in potential lost benefits plus pre-judgment interest at the legal rate.

**3.** While Counts 7 through 9 join Mercantile and the Plan Committee with the other defendants in charging undervaluations of the magazine's stock, it is clear from the record that Mercantile and the Plan Committee members could have had no part in that alleged misconduct. *See* discussion, *infra.*

entitled to rely upon directions from the Plan Committee and upon this Court's Order of July 15, 1985. While not alleging that they are not fiduciaries under ERISA, the Plan Committee members join with Mercantile in challenging Counts 7 through 9 as not ripe for adjudication.

## ANALYSIS

### A. Fiduciary Status of Mercantile Under ERISA

■ As the controlling statute, ERISA provides the guidelines for determining who is a fiduciary with respect to an employee benefit plan. ERISA expressly limits fiduciary status to those persons who either exercise "discretionary authority or ... control" over the assets or administration of a plan, or "render[ ] investment advice for a fee...." ERISA § 3(21), 29 U.S.C. § 1002(21). Those persons acting as trustees who perform wholly nondiscretionary functions fall outside the class of actors upon whom Congress sought to impose fiduciary duties. *See, e.g., O'Toole v. Arlington Trust Co.,* 681 F.2d 94, 96 (1st Cir.1982); *Robbins v. First American Bank of Virginia,* 514 F.Supp. 1183, 1189–91 (N.D.Ill.1981); *Hibernia Bank v. Int'l Bhd. of Teamsters,* 411 F.Supp. 478, 489–90 (N.D.Cal.1976).

■ Plaintiffs allege no facts that would support a threshold determination of fiduciary status as to Mercantile.[4] What allegations they do make already presuppose the existence of such status. In this connection, for example, plaintiffs charge that, in approving the terms of the 1984 sale, Mercantile violated the trust it held on behalf of the plaintiffs.[5] Yet no violation of trust could have taken place unless there arose a trust relationship at the outset. Neither did Mercantile stand in a fiduciary relation to the plaintiffs while they were still employed, nor after they left their employment. If Mercantile can be said to be a fiduciary at all, it is such with respect to the current Plan participants,[6] who benefited from the 1984 sale, not with respect to former participants who terminated their relationship with the magazine well before the sale. Consequently, if any class of individuals has standing to object to the terms of the sale, it is the current, not former, beneficiaries of the Plan.

### B. Ripeness

■ Both Mercantile and the Plan Committee members contend that the issues raised in Counts 7 through 9 of the amended complaint are not yet justiciable. The defendants are correct; it is not within the purview of federal courts to decide controversies based on contingencies that have yet to ripen into actualities. *See, e.g., Dames & Moore v. Regan,* 453 U.S. 654, 689, 101 S.Ct. 2972, 2991, 69 L.Ed.2d 918 (1981); *Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 304, 101 S.Ct. 2352, 2374, 69 L.Ed.2d 1 (1981); *Metzenbaum v. Federal Energy Reg.*

---

**4.** To the contrary, plaintiffs elsewhere assert that the voting trustees "had and exercised total control over the affairs ... of the Plan." Amended Complaint ¶ 3.17. Nothing in the record, even as it has been fully developed in the *Foltz* litigation, suggests that Mercantile ever exercised any "discretionary authority ... or control" over the Plan assets or administration.

**5.** In addition, plaintiffs assert that Mercantile was under a duty at all times to certify the accuracy of financial information about the Plan assets to the Plan administrators, relying on Section 103(a)(2) of ERISA, 29 U.S.C. § 1023(a)(2). This provision, however, pertains only to "such information as is contained within the ordinary records of the bank ... and is *needed* by the plan administrator to comply

[with reporting and disclosure requirements]." 29 C.F.R. § 2520.103–5(c)(2)(iii) (1985) (emphasis added). In other words, because the Plan Committee received what information it needed from other sources, Section 103 imposed no duties upon Mercantile. *See* Plan Document ¶ 6.3 (Exhibit 6 submitted by the *Foltz* plaintiffs in support of their Motion for Preliminary Injunction) (Board transmits information to Plan Committee, which informs Trustee).

**6.** The *Richardson* plaintiffs have made vague reference to, and the *Foltz* plaintiffs have elaborated, the notion that they are continuing participants in the Plan. For an analysis of why that contention is without merit, see the Order filed this day dismissing Mercantile and the Plan Committee members from the *Foltz* litigation.

*Comm'n*, 675 F.2d 1282, 1289–90 (D.C.Cir. 1982); *American Internat'l Group, Inc. v. Islamic Republic of Iran*, 657 F.2d 430 (D.C.Cir.1981); 13A Wright & Miller, *Federal Practice and Procedure: Jurisdiction 2d* §§ 3532, 3532.2 (1984); C. Wright, *Law of Federal Courts* § 12 (4th ed. 1983).

■ Plaintiffs' claim against Mercantile and the Plan Committee members is not that they were involved in the underlying transactions that initially gave rise to this and the *Foltz* suits, but that these defendants have acted so as to lessen the amount of funds available to satisfy a possible judgment to be awarded either to the *Foltz* plaintiffs or to those in this suit. For such a claim to state a cognizable cause of action, the *distribution* occurring in July 1985 must have been itself wrongful. It is not enough that plaintiffs prefer to look to more or deeper pockets than those currently within their reach. Absent some wrongdoing on their part, there is no reason why either of these defendants should be joined in this suit merely to satisfy some speculative shortfall in the recovery available. To this extent, not only are the claims against Mercantile and the Plan Committee members not ripe, but it may be improbable that they will ever lie against those defendants.[7]

Finally, in response to plaintiffs' "apodictic" assertion that Mercantile, if not the Plan Committee members, is a "necessary" party to the suit, we note that not even Mercantile fits into that category of parties within the meaning of Rule 19, Fed.R. Civ.P. There is no reason why "complete relief cannot be accorded among those already parties" in Mercantile's absence. At most Mercantile is a stakeholder and, as such, has been enjoined from distributing monies representing the measure of plaintiffs' likely recovery. There is simply no need to make Mercantile a party-defendant.

## CONCLUSION

For the reasons outlined above, it is this 26th day of November, 1985,

## ORDERED

That defendants' motions are granted and that Counts 7 through 9 of the Amended Complaint are dismissed without prejudice as to Mercantile and defendants Gretchen Langston, James Glassman, John Mashek and Neil Rice.

---

**7.** Mercantile acted at the direction of the Plan Committee, which in turn acted for the benefit of the Plan's current beneficiaries and in reliance upon this Court's Orders of June 14, 1985 and July 15, 1985. While these Orders do not foreclose a finding of liability exceeding the sum set aside for satisfaction of a potential judgment, they do mark the limits of any *likely* recovery. *See* 613 F.Supp. at 646–48. Significantly, the funds set aside by this Court's injunctions represent, not just monies due from the Plan, but a measure of damages equivalent to the difference between what benefits plaintiffs were paid and what they allege was due. *See Foltz v. U.S. News & World Report*, 760 F.2d 1300, 1307–08 (D.C.Cir.1985) (remanding to district court). Admittedly, the set-aside in *Foltz* did not include $4 million attributable to the phantom stock, but, as noted in this Court's June 14, 1985 opinion, such sum cannot be recovered from the Plan. 613 F.Supp. at 644 n. 11, 645–46. On the whole, however, the set-

aside represents the amount of damages (other than the punitive damages claimed in the most recent *Foltz* amended complaint) recoverable under the most generous legal theory pressed in either suit. Significantly, neither group of plaintiffs has appealed either set-aside as inadequate.

In addition, because the set-asides were designed to balance the interests of the *Foltz* and *Richardson* plaintiffs against those of the current Plan beneficiaries, Mercantile and the Plan Committee were wholly justified in relying upon the Orders. Since guilty of no wrongdoing, these defendants cannot be charged with any shortfall in recovery available to either group of plaintiffs. *See* III A. Scott, *Trusts* § 226 at 1800 (3d ed. 1967) (trustee entitled to rely upon court instructions).

Finally, because the claims against these defendants are dismissed without prejudice to renew them at a later time, the Court's Order works no hardship upon plaintiffs.