**Charles S. FOLTZ, et al., Plaintiffs,**

v.

**U.S. NEWS & WORLD REPORT, INC., et al., Defendants.**

Civ. A. No. 84–0447.

United States District Court, District of Columbia.

Nov. 26, 1985.

Alan Raywid, John D. Seiver and Susan P. Baxter, Cole, Raywid & Braverman, Washington, D.C., for plaintiffs.

Nell Strachan, Venable, Baetjer & Howard, and Lawrence Latto, Shea & Gardner, Washington, D.C., for defendants.

### MEMORANDUM ORDER

**(Dismissing Claims Against Defendant Mercantile and Defendants Langston, Glassman, Mashek and Rice)**

BARRINGTON D. PARKER, District Judge.

In a Restated Fifth Amended Complaint, the plaintiffs have named as added defendants the Mercantile-Safe Deposit and Trust Company ("Mercantile") and four individuals: Gretchen Langston, James Glassman, John Mashek and Neil Rice, all members of the current Plan Committee. Plaintiffs charge that these defendants breached fiduciary duties owed them by approving a disbursement of funds held by the U.S. News Profit-Sharing Plan ("Plan") in July

1985. The disbursement followed upon, but did not violate, this Court's Order of June 14, 1985, enjoining distribution of a portion of the funds. All defendants have moved to dismiss on the grounds that the claims advanced against them are premature. In addition, Mercantile argues that plaintiffs fail to state a claim as to it, because Mercantile is not a fiduciary under the controlling statute, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Identical motions were filed by the same defendants in a newly-filed proceeding, *Richardson, et al. v. U.S. News & World Report, et al.*, 623 F.Supp. 350 (D.D.C.1985), which the Court has granted on this date. The claims in *Richardson* against the defendants were dismissed [1] both because the claims were purely hypothetical, and thus did not present a justiciable case or controversy, and because the claims did not lie against these defendants, none of whom stood in a fiduciary relation to the plaintiffs at the relevant time.

The *Foltz* plaintiffs, however, acknowledging the importance of proving some duty owed to them that would render it wrongful for these defendants to have made any distribution of funds to the possible prejudice of rights that plaintiffs may have acquired in those funds, have argued a theory not elaborated by the *Richardson* plaintiffs. Specifically, the *Foltz* plaintiffs contend that they are *current*, not *former*, participants in the U.S. News Profit-Sharing Plan and, hence, that these defendants were under a fiduciary obligation to recognize and to protect plaintiffs' interests. While intriguing at first glance, this theory is completely without merit.

**1.** Just as in *Richardson*, plaintiffs' claims here are dismissed *without* prejudice.

**2.** ERISA defines a plan "participant" as
any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of

Plaintiffs rely upon *Saladino v. I.L.G. W.U. Nat. Retirement Fund*, 754 F.2d 473 (2d Cir.1985) for the proposition that "former employees with a colorable claim to vested benefits" fall within the category of persons who "may become eligible" to receive benefits under ERISA.[2] *Id.* at 476. However, the *Saladino* court went on to hold that the plaintiff was not a plan participant within the meaning of ERISA because he did not fall within the definition of a participant contained in the relevant plan document. *Id.* at 477. To the extent that the terms of the plan in question control the issue of whether one "may become eligible" to receive benefits, the *Foltz* plaintiffs clearly are not current participants in the U.S. News Plan.

The U.S. News Plan Document provides that a "member" in the Plan remains a member "so long as he or she is actively at work and so long as a continuous common-law employer-employee relationship is maintained between the Employer and such person...." Plan Doc. at ¶ 1.9(a) (submitted as Plaintiffs' Exhibit 6 in Support of Motion for Preliminary Injunction). The Plan Document further provides that

> [n]otwithstanding any other provisions of this Plan, a retired Member shall not again become a Member or become entitled to share in a further allocation of the Employer's contribution hereunder regardless of the number of hours in any period that the retired Member may work for the Employer as a part-time consultant or otherwise.

*Id.* at ¶ 1.9(c). The Plan quite clearly does not contemplate that separated employees will continue to "participate" in the Plan long after their accounts have been liquidated.[3]

such organization, or whose beneficiaries may be eligible to receive any such benefit. Section 3(7), 29 U.S.C. § 1002(7).

**3.** Significantly, no member of the class has elected continued participation in the Plan after separation, as opposed to a lump-sum payment or an annuity. Only six U.S. News employees since 1962 have elected to continue to maintain an account balance in the Plan. Plaintiffs' Statement of Material Facts Not in Genuine

**62**

It should also be noted that the Court has already visited the issue, in another context, of whether plaintiffs are "continuing participants" in the Plan. In its Order of August 23, 1985, the Court dismissed the claims brought under ERISA against the Plan by those employees who retired in 1974, prior to the effective date of ERISA.[4] In arriving at that conclusion, the Court expressly rejected plaintiffs' arguments that they were continuing participants and, hence, that actions taken by defendants after 1975 had some retroactive effect on the interests of plaintiffs who retired before 1975.

Finally, if plaintiffs are continuing participants in the Plan, then they, and all other U.S. News employees similarly situated, would be participants to the extent of any depreciation as well as appreciation in the Plan assets. It strains the imagination to think that the Plan could somehow demand of its former employees rebates reflecting the amounts that they may have been *overpaid.* Moreover, such a scheme would demand that the Plan administrators constantly calculate and recalculate the benefits owed or owing to all of the magazine's former employees.[5]

Accordingly, it is this 26th day of November, 1985,

### ORDERED

That defendants' motions are granted and the plaintiffs' claims against defendant Mercantile and defendants Gretchen Langston, James Glassman, John Mashek and Neil Rice are dismissed without prejudice.

Issue ("S.M.F.") ¶ 100 (citing U.S. News Req. for Adm. ¶ 19). Of these six former employees, none are in the plaintiff class. S.M.F. ¶ 101 (citing U.S. News Ans. to Interrog. ¶ 17); S.M.F. ¶ 106 (citing Plaintiffs' Exhibit 7) (Sweet Profit-Sharing Fund Agreement); S.M.F. ¶ 108 (citing Keker Depo. at 134).

4. *See* ERISA §§ 414, 514, 29 U.S.C. §§ 1114, 1144.

5. Of course, plaintiffs would contend that the circumstances of their case place them in a unique situation that demands recalculation of their benefits. Such an argument, however, goes to the merits of whether any monies are owed them; it does not suggest that former participants in the Plan can, in a principled way, be considered *current* participants.