Geigel **MIRANDA and Ivan Negron, for himself and representing his deceased mother Solerta Davila, Plaintiffs,**

v.

**Gloria Morales MIRANDA, Enrique Marquez Santos, and Royal Insurance Company of Puerto Rico, Inc., Defendants and Third Party Plaintiffs,**

v.

**The BLACK & DECKER CORP., et al., Third Party Defendants.**

**Civ. No. 87–0295 (JP).**

United States District Court, D. Puerto Rico.

June 10, 1988.

Aníbal Medina Ríos, José Antonio Lugo, Lugo & Berkowitz, Hato Rey, Puerto Rico, for plaintiffs.

José Luis Ubarri, Law Offices of Benjamín Acosta, Teresita Picó Vidal, San Juan, Puerto Rico, for defendants and third party plaintiffs.

Darío Rivera Carrasquillo, Cordero, Miranda & Pinto, Old San Juan, Puerto Rico, for third party defendant.

## OPINION AND ORDER

PIERAS, District Judge.

This diversity action arises out of a fire at defendant Gloria Morales Miranda's home on December 11, 1986.

Solerta Dávila was killed by injuries received in that fire. Her widower, Geigel Miranda, and her surviving son Ivan

---

Negrón, are suing Morales, her insurance company, and a workman who was present at Miranda's home on December 11, 1986, whose actions and omissions may have caused the fire. Defendants have moved to dismiss the case, arguing that plaintiff Geigel Miranda was, like defendants, a citizen of the Commonwealth of Puerto Rico on the date of the complaint, February 25, 1987. As such, defendants argue, complete diversity of citizenship between the parties is lacking and this Court is berift of subject matter jurisdiction over this case.

The Court has before it transcripts of plaintiff Miranda's deposition. Defendants have further submitted plaintiff Miranda's answers to interrogatories. Plaintiffs rely on defendants' evidentiary submissions.

### I. *Findings of Fact*

1. Plaintiffs Geigel Miranda and Iván Negrón filed the original complaint in this case on February 25, 1987. The complaint was amended on June 16, 1987. It is not disputed that plaintiff Iván Negrón is a citizen of the State of New Jersey.

2. Defendants Gloria Morales Miranda, Royal Insurance Company, and Enrique Marquez Santos are all citizens of the Commonwealth of Puerto Rico.

3. Miranda and his wife were married in Puerto Rico in 1981. They purchased a house at Street 10, E–18, Villas de Loiza, Canóvanas, Puerto Rico, that year. Electricity and water accounts, driver's licenses, and automobile registration documents all list Miranda at this Canóvanas address. Mortgage and water payments were received by the appropriate entities for crediting to Miranda's account after the date of filing of the original complaint. Miranda's house, under the terms of a mortgage subsidy program from which it benefits, cannot be rented. If sold, Miranda would be subject to a monetary penalty under a mortgage subsidy program.

4. By his own testimony, taken at deposition, plaintiff Miranda admitted having deliberately misrepresenting his addresses in Puerto Rico on his marriage certificate and application to the mortgage subsidy program. Miranda stated that he gave a Puerto Rico address on the mortgage subsidy program application merely to take advantage of the program.

5. Miranda testified to holding jobs in both Puerto Rico and New Jersey throughout his life. Miranda holds a current Puerto Rico driver's license and a New Jersey driver's license that expired in mid–1986.

6. After his release from the hospital, Miranda left Puerto Rico and took up residence with his daughter at 1120 Hudson Street, Hoboken, New Jersey. Miranda left Puerto Rico "around Three Kings Day." In 1987, Three Kings Day was Tuesday, January 6.

7. Plaintiff testified that he now resides at 527 Park Avenue, Hoboken, New Jersey with his sister. He testified that he receives public assistance in New Jersey. He is being treated for a cancer at St. Mary's Hospital in Hoboken. Miranda is also receiving psychiatric counseling at St. Mary's Mental Health Center in Hoboken. This counseling is subsidized.

8. On March 5, 1987, after the filing of the complaint, Miranda registered to vote in Hoboken. By his own admission, he gave a false address. The address he gave was that of a cousin in Hoboken. Miranda testified that he gave his cousin's address so that he could vote in a particular "section" of Hoboken at the behest of his family.

9. Since the death of his wife, Miranda has not maintained banking or credit accounts in Puerto Rico.

10. Miranda has never filed federal, New Jersey, or Puerto Rico income tax returns, although he has paid taxes through withholding at jobs in New Jersey or Puerto Rico. He is currently unemployed.

11. The only occasion plaintiff has had to return to Puerto Rico since his departure in 1987 was to attend depositions in this case.

### II. *Conclusions of Law*

The issue is whether Geigel Miranda was domiciled in New Jersey or in Puerto Rico

on February 25, 1987, the date on which the original complaint was filed in this case. For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(1), state citizenship is the equivalent of domicile. *Williamson v. Osenton*, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914). The determination of a party's citizenship for diversity purposes is a mixed question of law and fact. *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 702 (1st Cir.1979). The Court may consider matters outside of the pleadings without holding a hearing. *Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 728–29, 83 L.Ed. 1111 (1939); *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 98 (1st Cir.1982); *Hawes*, 598 F.2d at 699; *Kressen v. National Insurance Co.*, 648 F.Supp. 1165, 1167 (D.P.R.1986). In this case, plaintiff was deposed extensively and both parties rely on his deposition testimony and answers to interrogatories in support of their respective position. "As is usual in domicile cases, there is no dispute as to the facts; it is their interpretation that gives rise to the problem." *Hawes*, 598 F.2d at 699.

Two elements are necessary to establish domicile: (1) physical presence in the claimed domicile; and (2) an intent to remain there indefinitely. *Sun Printing & Publishing Assn. v. Edwards*, 194 U.S. 377, 383, 24 S.Ct. 696, 698, 48 L.Ed. 1027 (1904). Both elements must be met but once they are, domicile is instantly acquired. *Id.; White v. All American Cable & Radio, Inc.*, 642 F.Supp. 69, 72 (D.P.R. 1986). These elements must be shown by competent proof and the burden falls on plaintiff. *O'Toole*, 681 F.2d at 98; *Kressen*, 648 F.Supp. at 1167. Because the law presumes that established domicile continues unless and until new domicile is acquired, plaintiff's burden in proving the establishment of new domicile is heavy. *White*, 642 F.Supp. at 72. It is not, however, insurmountable. Plaintiff must show the establishment of new domicile by a preponderance of the evidence.

Mr. Justice Holmes characterized domicile as "the technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to by law may be determined." *Williamson v. Osenton*, 232 U.S. 619, 625, 34 S.Ct. 442, 443 (1914). Not all the citizenry, however, treats their living arrangements with the observance of technicalities that Mr. Justice Holmes envisioned would make life more orderly. In this case, plaintiff has flitted between New Jersey and Puerto Rico most of his life, holding jobs but never a career in either place. Plaintiff has never filed income tax returns and voted only at the prompting of his family. He avails himself not of the banks of Puerto Rico, except to acquire a subsidized house using an address that he acknowledges was deliberately misleading. That his New Jersey driver's license is expired concerns him not for he has one still in force from Puerto Rico.

Nevertheless, these are not controlling considerations. Defendants have argued, persuasively, that up to and including the date of the fire in December 1986, Miranda was a domiciliary of Puerto Rico. That, however, is not the issue at hand. Although defendants' showing places the burden on plaintiff to demonstrate by a preponderance of the evidence that he changed domicile, it does not establish that Miranda is now a domiciliary of Puerto Rico. Plaintiff has not rebutted the evidence that he still maintains ties to Puerto Rico. He is still deed holder of record for the Canóvanas property. The mortgage and ancillary upkeep is apparently still met, although the source of those funds is not in the record. He still holds a Puerto Rico driver's license, although it was acquired before even the fire. Defendants' showing of plaintiff's domicile as of the date of the original complaint, however, goes only this far.

What plaintiff has shown is the following: On the date of the original complaint, plaintiff was physically present in New Jersey, residing with his sister. The physical presence requirement is met. Plaintiff has joined his family in New Jersey within a few weeks of the sudden and awful loss of his wife. Miranda is availing himself of social services in New Jersey and thereby assisting his sister in his care of him. Also, Miranda is a sick man and is receiv-

ing cancer therapy in Hoboken. The logical and inescapable conclusion is that Miranda, burdened with these personal tragedies, has elected to be near his family. The language that Miranda used throughout his lengthy deposition reads as that of a visitor who intends to return to New Jersey. Although such self-serving statements should be treated with judicial skepticism, *White*, 642 F.2d at 72, they are not per se incredible. This satisfies the second element of the test, an intent to remain indefinitely. The sincerity of this intent can be supported by the fact that Miranda has remained in New Jersey save for attendance in Puerto Rico for proceedings in this very case. *Cf. White*, 642 F.Supp. at 72 n. 3. The Court holds that plaintiff has proven by a preponderance of the evidence that plaintiff was a domiciliary of the State of New Jersey on the date the original complaint was filed, February 25, 1987. There was, then, complete diversity of citizenship amongst the opposing parties in this case. The proper jurisdictional amount having been pled and supported, this Court has subject matter jurisdiction to entertain this action. The Motion to Dismiss is DENIED.

Accordingly, and after a Further Initial Scheduling Conference (ISC) held in this case on March 30, 1988, the Court SETS the following schedule, as agreed to by the parties at that conference.

1. The Black & Decker saw alleged to have started the fire and in the custody of the Police of Puerto Rico shall be the subject of inspection on May 4, 1988, at the law offices of Benjamín Acosta.

2. Third party defendant Black & Decker shall depose the following persons at the offices of Benjamín Acosta on the dates and times listed herein:

a) Enrique Márquez: May 17, 1988, 9:00 a.m.

b) Geigel Miranda: May 20, 1988, 1:00 p.m.

c) Iván Negrón: May 23, 1988, 9:00 a.m.

d) Gloria Moreales Miranda: May 24, 1988, 9:00 a.m.

e) Hipólito Colón: May 27, 1988, 9:00 a.m.

3. All parties shall name their expert witnesses on the products liability issue raised by defendant against third party defendant on or before June 4, 1988. Curriculum vitae shall be provided at that time. Expert reports shall be produced on or before June 15, 1988. Failure to comply with these deadlines shall result in the exclusion of the expert witness. Fed.R.Civ.P. 37(b)(2)(B).

4. The expert witnesses shall be deposed at the law offices of Benjamín Acosta on the following schedule:

a) Plaintiffs': June 20, 1988, 9:00 a.m.

b) Defendants': June 28, 1988, 9:00 a.m.

c) Third party defendants': June 30, 1988, 9:00 a.m.

5. Additional witnesses will not be allowed because this will create undue prejudice to the opposing party. If any party wishes to use any additional witnesses, it will be discretionary with the Court, provided that the parties state in writing on or before June 15, 1988, the following information regarding each additional witness: name and address with a short statement as to the subject matter of their testimony, and proof that the names of these witnesses, or the fact that their testimony was decidedly material, was not known at the time of this Initial Scheduling Conference, and the reason why they were not known. In the case of a proposed expert witness, the party requesting leave to amend the witness list shall also provide a copy of the proposed expert's curriculum vitae.

Noncompliance with this Order will result in such witnesses not being allowed to testify at trial. The Court expressly reserves its decision as to whether the reasons given constitute good cause shown to rebut the presumption that these witnesses should be excluded. The party informing new witnesses must produce them at its own cost for depositions to be scheduled by the other party, to be taken within two weeks if he so desires.

6. All discovery must be completed by July 7, 1988. By this deadline, all interrogatories and requests for admissions must be answered and all depositions and examinations taken. This means that interroga-

tories and requests for admissions must be served at least 30 days prior to the deadline and notice of depositions given within a reasonable time of the deadline.

7. *Schedule with the Court:* Pretrial is SET for August 10, 1988, at 2:00 p.m. The parties are ORDERED to have their principals available by phone during the Pretrial Conference under penalty of fine. Trial is SET for August 17, 1988, at 9:30 a.m.

Five working days prior to the date of trial, the parties shall:

1) in case of trial by jury, submit proposed jury instructions, if any, together with citations of authorities in support of the proposed instructions;

2) meet and mark all exhibits to be offered at trial, for identification;

Failure to comply with this Order is at the risk of the proponent of the evidence not submitted in accordance with the above requirements.

8. No further joinder of parties or amendment of the pleadings shall be allowed. In addition, the Court grants until July 29, 1988, for the filing of any and all dispositive motions; if not filed by said date, the defenses thereunder shall be deemed waived. Noncompliance with any order herein may result in the imposition of sanctions on the non-complying party, attorney, or both, which may include the imposition of a fine.

The dates specified herein were agreed to or otherwise ordered by the Court at the meeting and the parties have been informed by the Court that they have to comply with such schedule regardless of the fact that this Order, in its written form, may not be entered before the event. These dates shall not be changed. If changed, the same is at the risk of the party interested in the information or discovery and in no event shall affect the subsequent course of the action as scheduled herein. Fed.R.Civ.P. 16.

IT IS SO ORDERED.