HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES INTERNATIONAL UNION WELFARE FUND, a multiemployer employee benefit fund, and Edward T. Hanley and Patrick J. Kane, as Trustees, Plaintiffs.

v.

Virgil GENTNER; Virgil R. Gentner, Chartered, a Professional Corporation, Defendants.

No. CV–S–92–576–PMP (RJJ).

United States District Court,
D. Nevada.

March 9, 1993.

Thomas L. Pursel, Las Vegas, NV, Diana L.S. Peters, Feder & Associates, Washington, DC, for plaintiffs.

James R. Olson, Adam S. Kutner, Rawlings, Olson & Cannon, Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

Before the Court is Defendant Virgil R. Gentner's ("Gentner") Motion to Dismiss (# 8A), filed November 10, 1992. Plaintiffs Welfare Fund and Edward T. Hanley and Patrick J. Kane as Trustees ("Trustees") filed an Opposition (# 17) on December 24, 1992, and Gentner filed a Reply (# 18) on January 21, 1993. On February 24, 1993, a hearing was conducted regarding Defendant's Motion.

## FACTS

This case arises from an accident involving one of the Welfare Fund's participants, Joseph K. Newell ("Newell"). Newell was a participant in Plan Unit 150 of the Welfare Fund. This Unit provides benefits to eligible covered employees in the Las Vegas area, and it is undisputed that this Fund is a "Plan" subject to the provisions of the Employee Retirement and Income Security Act ("ERISA"). On April 2, 1987, a car struck and severely injured Newell. The car and/or the driver were insured by Travelers Indemnity Insurance Company ("Travelers").

According to Plaintiffs, the Fund paid $90,544.16 of Newell's medical expenses. In connection with this payment, the Fund required Newell to provide it with a statement of the details concerning the accident. It also required Newell to execute a Subrogation Agreement in which he agreed to reimburse the Fund for all expenditures it made on his behalf if and when he recovered any monies from the party responsible for the accident or from that party's insurance carrier.

Newell executed the Subrogation Agreement on July 13, 1987. Typed at the bottom of the Agreement is the following: "This document is executed under portest [sic] as outlined in that certain correspondence dated July 20, 1987 from Virgil R. Gentner." Gentner was Newell's attorney and represented Newell in connection with this accident.

In March 1988, Gentner entered into a settlement with Travelers on Newell's behalf for a total sum of $725,000. A lien on behalf of Humana Hospital in the amount of $135,000 was satisfied and the remaining $589.936.74 was distributed to Newell and Gentner.[1]

The subject of this lawsuit revolves around the almost $590,000 that Newell recovered from Travelers Insurance. The Trustees argue that Gentner was obligated to repay $90,544.16 to the fund out of the settlement money Newell received from Travelers.

Specifically, the Trustees contend that Gentner violated two ERISA provisions. First, they argue that one of the terms found in the Fund's governing documents is that all monies paid by the Fund to a Participant shall be reimbursed pursuant to a signed Subrogation Agreement, if and when the Participant recovers from the responsible party. The Trustees argue that because Gentner knew of the Subrogation Agreement and did not reimburse the Fund according to the Agreement's terms, he violated the terms of the Subrogation Agreement and thereby violated the terms of the Fund. Under 29 U.S.C. § 1132(a)(3), the Trustees assert, fiduciaries of a plan may bring a civil action to recover for violations of an ERISA plan. The Trustees also cite the ethical rule embodied in ABA Model Rule 1.15(b). This rule requires an attorney who receives property or funds promptly to notify a third person that has an interest in the property or funds, and to deliver to this third person any of this property or funds that the person is entitled to receive. The Trustees argue that Gentner violated this rule when he failed to turn over monies paid by Travelers and owed to the Fund pursuant to the Subrogation Agreement.

Second, the Trustees argue that Gentner breached a fiduciary duty owed to the Fund. They contend that Gentner should be considered a "fiduciary" of the Fund under ERISA's definition found in 29 U.S.C. § 1002(21)(A). They argue that the money paid by Travelers to Gentner and Newell became Fund assets pursuant to the Subrogation Agreement. The Trustees assert that when Gentner accepted the money from Travelers and paid some of it to Newell and kept the rest, he exercised discretionary authority over Fund assets. The Trustees argue that under ERISA, Gentner thereby became a fiduciary. By knowingly failing to honor the Subrogation Agreement, the Trustees contend, Gentner breached a fiduciary duty he owed to the Fund.

In response to the Trustees' claim that Gentner violated ERISA by violating the Plan when he failed to reimburse the Fund pursuant to the Subrogation Agreement, Gentner argues that he is not the proper defendant in this lawsuit. He contends that he had no professional relationship with the Fund, and that under Nevada law, absent such a relationship, he cannot be held liable for proceeds he recovered in which an insurer such as the Fund has a subrogation interest. He argues there was no contractual relationship between himself and the Fund, and that Plaintiffs have not cited authority for holding a nonparty attorney liable as a nonsignatory to a contract on a contractual theory. He also argues that violation of a code of professional responsibility does not give rise to a private cause of action against attorneys in most jurisdictions. Finally, he indicates that a Release of All Claims was executed on March 17, 1988. He asserts that the purpose of this Release was to enable Newell to collect the $750,000 minus the $135,000 lien that Humana had placed on the settlement, and that after negotiation or litigation with Humana regarding this lien, the $135,000 was to be applied to any obligations owed by Newell to the Fund pursuant to the Subrogation Agreement.

With respect to Plaintiffs' claim that Gentner breached his fiduciary duty to the Fund, Gentner contends that he cannot be consid-

---

1. There also evidence that after Newell terminated his relationship with Gentner, he retained new counsel and pursued the $135,000 on which Humana had placed a lien. According to Defendants, Newell, through this new counsel, filed suit, and recovered $200,000 in compensatory damages, and $2.5 million in punitive damages. However, counsel advised the Court at the hearing conducted February 24, that the Judgment against Humana is on appeal and the $2.5 million punitive damage award was set aside post-trial.

ered a fiduciary of the Fund under ERISA, and therefore could not have breached such a duty. He contends that there is no authority for holding him as a fiduciary, and that recent Ninth Circuit opinions have held that attorneys who do not exercise authority over a plan other than performing usual professional functions are not fiduciaries.

## ANALYSIS

 In considering Defendant's Motion to Dismiss, the factual allegations of Plaintiffs' Complaint must be presumed to be true, and this Court must draw all reasonable inferences in favor of Plaintiffs. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). The issue is not whether Plaintiffs will ultimately prevail, but whether they are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Consequently, the Court may not grant a Motion to Dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiffs' Complaint. *Western Mining Council v. Watts*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

### 1. Violation of Plan

The Trustees argue that Gentner is liable under § 1132(a)(3) for violating the terms of the Subrogation Agreement. They maintain that although this section of ERISA limits who may *seek* relief, it does not specify *against whom* relief may be sought. Indeed, "Congress clearly contemplated the involvement of non-fiduciary parties with employee benefit plans when it drafted provisions of ERISA. For example, ERISA sections 502(a)(3) and 502(a)(5) [§ 1132(a)(3) and (a)(5) ] authorize suits to enjoin or obtain

other equitable relief for 'any act or practice' violating either the statute of the terms of a plan, *without restricting the types of parties who may be so sued.*" *Useden v. Acker*, 947 F.2d 1563 (11th Cir.1991) (emphasis added).

Despite the absence of any contractual or professional relationship between the Fund and Gentner, the Trustees urge this Court to find that ERISA permits them to hold Gentner responsible under § 1132(a)(3). They state that Gentner took action to facilitate the payment of benefits by urging his client to sign the Subrogation Agreement, and that Gentner breached the Agreement when he received settlement money from Travelers but failed to reimburse the Fund with part of those monies.

 Gentner argues that absent a professional relationship between the attorney and the insurer under state law, an attorney is not liable for monies he recovers in which the insurer (the Fund in this case) has a subrogation interest. ERISA section 1144(b)(2)(B), however, specifically preempts state law. Section 1144(b)(2)(B) states that "neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer" for any state law purpose. Therefore, ERISA specifically preempts a state law that concerns insurers and their rights under subrogation agreements.[2] *See also Chapman v. Klemick*, 750 F.Supp. 520, 523 (S.D.Fla.1990) (holding that "state case law which has held that an attorney has no duty to turn over proceeds of settlements or lawsuits to the insurer pursuant to a subrogation clause in the insurance policy" is preempted by ERISA).

ERISA itself is silent on the issue of subrogation agreements. Where ERISA is silent on a particular subject, courts should look to Federal common law. *See Davidowitz v. Delta Dental Plan of California, Inc.*, 946 F.2d 1476 (9th Cir.1991) (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1988)). In developing this federal common

---

2. To the extent that Gentner's argument is a defense grounded in state contract or agency law, ERISA preempts state law in these areas.

*See, e.g., Nevill v. Shell Oil Co.*, 835 F.2d 209 (9th Cir.1987).

law, the Ninth Circuit has directed courts to borrow "from state law where appropriate, and [be] guided by the policies expressed in ERISA and other federal laws." *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1502 (9th Cir.1985).

■ This Court holds that the Trustees have not stated a claim for which relief may be granted under § 1132(a)(3), and that Gentner's motion to dismiss must be granted on this claim. It is true that Gentner knew about the existence of the Subrogation Agreement, and counseled his client to execute it, albeit with enough reservations to type "executed under protest" on the bottom of the Agreement. It is also true, however, that Gentner was not a party to the Subrogation Agreement. Section 1132(a)(3) states that a civil action may be brought to redress violations and enforce any provisions of ERISA or of the Plan. There is no doubt the failure to reimburse the Fund for monies it paid to Newell constituted a violation of the provisions of the Fund, namely, the Subrogation Agreement. The Trustees, however, have provided no convincing argument to hold Gentner responsible for this violation.[3] Knowledge of the existence of Newell's duty to reimburse the Fund, by itself, cannot be enough to impose liability on Gentner under § 1132(a)(3).[4]

### 2. Breach of Fiduciary Duty

■ It is generally accepted that Congress intended courts to construe broadly the term "fiduciary" as defined under § 1002(21)(A). *See generally Consolidated Beef Indus. v. New York Life Ins. Co.,* 949 F.2d 960 (8th Cir.1991); *Brock v. Hendershott,* 840 F.2d 339 (6th Cir.1988); *Blatt v. Marshall and Lassman,* 812 F.2d 810, 812 (2d Cir.1987); *Donovan v. Mercer,* 747 F.2d 304 (5th Cir. 1984).

The Trustees also contend that when the money provided by Travelers was paid to Gentner, this money became "assets of the Fund" by virtue of the Subrogation Agreement. The Trustees argue that by exercising control over this money, Gentner became a fiduciary of the Fund pursuant to the definition of "fiduciary" found in 29 U.S.C. § 1002(21)(A). Failure to reimburse the fund as required by the Subrogation Agreement, the Trustees allege, is a breach of Gentner's fiduciary duty in violation of 29 U.S.C. § 1109.

There are several problems with the Trustees' argument. First, if this Court were to follow the Trustees' logic, it would have to hold anyone who claimed and later received part of the $750,000 settlement to be a fiduciary also. For example, in this case, Humana Hospital put a lien on $135,000 of the settlement money. Under the Trustees' argument, Humana, by placing a lien on part of the settlement, exercised discretionary authority over Fund assets and would have to be considered a fiduciary. This Court finds that the Trustees have failed to present a persuasive argument that Congress intended to go this far in its definition of ERISA fiduciaries.

A second problem with holding Gentner to be a fiduciary is that the logic used to define him as a fiduciary would also serve to automatically deem an attorney in Gentner's position to be a fiduciary of an ERISA plan, whether or not he knew of the existence of the Agreement. Under a strict reading of the ERISA language, if a person exercises discretionary authority over Trust assets, he is a fiduciary. There is no requirement in the language that he know he is exercising authority over trust assets. To hold, however, that a person without knowledge of a Subrogation Agreement is a fiduciary when he unknowingly disburses funds to which an

---

**3.** Note that the case upon which the Trustees rely, *Chapman v. Klemick,* 750 F.Supp. 520 (S.D.Fla.1990) did not reach the issue of whether the attorney in that case was liable under the Subrogation Agreement pursuant to ERISA section 1132(a)(3).

**4.** This analysis might very well change if, for example, the attorney held the entire settlement in trust for the client, or in some other manner

exerted complete control over the settlement funds. Furthermore, this Court expresses no opinion as to the result where a subrogation agreement is silent on the issue of attorney's fees, and where the Trust attempts to compel the attorney to reimburse it pursuant to the Subrogation Agreement with monies received from the settlement and retained by the lawyer as attorney's fees.

ERISA plan has a claim is not consistent with general notions of fiduciary relationships. The *Chapman* case provides that "the legislative history of ERISA states that 'a fiduciary is one who occupies a position of confidence or trust'," and that because the attorney in that case knew of the Subrogation Agreement and had counseled his client to sign it, that attorney held such a position. That court went on to state that the Fund in that case "relied on [the attorney] to uphold the agreement his client had signed with his approval." The nature of the relationship between Gentner and the Fund is distinguishable from that present in *Chapman*, and to follow Trustees' argument would impose a duty on Gentner not willingly undertaken, and not otherwise imposed by ERISA. Gentner merely counseled his client to sign the Subrogation Agreement "under protest" (document # 21). This cannot be enough to put Gentner in a position of trust or confidence with respect to the Fund, nor can it support the imposition of fiduciary responsibility.

A third problem with holding Gentner to be a fiduciary under the facts of this case is that it creates an unacceptable conflict of interest. This Court recognizes that there are other areas of the federal law that at times conceivably create a conflict of interest. The *Chapman* Court noted one of these; namely, the requirement that an attorney report a cash payment of more that $10,000 from a client.[5] Under the Trustees' theory, however, there would always be a real and immediate conflict of interest between a Fund or Plan and the participant client where a Subrogation Agreement was in effect. This Court declines to put Gentner or any other attorney between the Scilla of safeguarding his client's interests and the Charibdis of upholding a fiduciary duty to a party with interests adverse to those of that client. *See, e.g., Useden v. Acker,* 947 F.2d 1563, 1575 (11th Cir.1991) (declining to deem a bank an ERISA fiduciary, citing competing obligations between the bank's duty to its own shareholders, and a duty to the Plan

that would arise if the bank were declared a Plan fiduciary).

House Report No. 93–533, dated October 2, 1973, as reprinted in 1974 USCCAN 4639, 4659, further illustrates why Gentner should not be considered a fiduciary. That report notes transactions in which fiduciaries are specifically prohibited from engaging. Indeed, these prohibitions are codified in ERISA at 29 USC § 1106(b). That section states

"A fiduciary with respect to a plan shall not— ... (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." . .

These subsections codify ERISA's mandate that fiduciaries act "solely in the interests of the participants, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity ..." would use. Holding Gentner to be a fiduciary would place him in the position of terminating the representation as soon as his client's interests became adverse to the interests of the Fund, or risk violating subsection (2). Likewise, had Gentner continued to represent Newell in a matter arising out of a conflict between the Fund and Newell, such as in litigation against Newell for reimbursement under the Subrogation Agreement, subsection (3) would seemingly prohibit Gentner, if declared a fiduciary, from receiving a fee. The problem with these scenarios does not lie with ERISA's desire to prohibit fiduciaries from undertaking certain transactions contrary to a plan's interests. Rather, the problem occurs only when attempting to fit Gentner within the definition of an ERISA fiduciary.

---

**5.** Note that the requirement that an attorney report any cash transactions worth more than $10,000 is clearly provided by statute. Unlike

that example, ERISA contains no such clear provision.

Finally, this Court notes that "ERISA abounds with the language and terminology of trust law." *Firestone Tire and Rubber, Co.*, 489 U.S. at 110, 109 S.Ct. at 953. "ERISA's legislative history confirms that the Act's fiduciary responsibility provisions ... 'codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.'" *Id.* (citing H.R.Rep. No. 93–533, p. 11 (1973), 1974 USCCAN p. 4649). This Court is not aware of any principle in the law of trusts that would support the imposition of fiduciary responsibility on Gentner. This Court will not "blindside" Gentner by implying the existence of obligations where there is no clear authority for doing so in ERISA.

This Order should not, however, be construed to countenance the unfettered right or discretion of attorneys to dispose of assets as they see fit when they are aware of a third party's rights under a Subrogation Agreement. Although the Code of Professional Conduct is silent on this matter, the Model Rules provide that an attorney may have a duty under applicable law to protect third party claims on property or funds of a client against wrongful interference of those claims by the client. *See* Comment, Rule 1.15. Although this Court declines to go as far as the *Chapman* court in holding that Gentner breached his fiduciary duty to the Fund, the better course of action for Gentner to have taken in this case would have been to place the money over which he knew the Fund had a claim into an escrow account, and, assuming he believed the Fund was not entitled to the money because of some problem with the Subrogation Agreement, to litigate that issue in a declaratory relief action. This course of action is not required by ERISA, but it is more consistent with ERISA's primary desire to protect the health of employee benefit plans. This qualification, however, does not warrant a different result in this case.

IT IS THEREFORE ORDERED THAT Defendant Virgil Gentner's Motion to Dismiss (# 8A) is hereby granted.