George **VEST, Jr.**, Milton Holzman, Thomas E. Ryan, Richard S. Pepper, Albert Kaufman, D.J. Velo, Robert Lid and Melvin Gray, on behalf of the Chicago District Council of Carpenters Welfare Fund, Plaintiffs,

v.

**GLEASON & FRITZSHALL, Rick A. Gleason and Steven N. Fritzshall, Defendants.**

No. 93 C 603.

United States District Court, N.D. Illinois, E.D.

Sept. 7, 1993.

Terrence Patrick Canade, Lord, Bissell & Brook, Chicago, IL, for plaintiffs.

Rick A. Gleason, Gleason & Fritzshall, Chicago, IL, for defendants.

*MEMORANDUM OPINION AND ORDER*

ASPEN, District Judge:

Trustees of the Chicago District Council of Carpenters Welfare Fund ("the Fund") bring this two-count complaint against Rick Gleason ("Gleason"), Steven Fritzshall ("Fritzshall"), and the law firm of Gleason & Fritzshall, charging defendants with breaching fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), forgery, and conversion. Presently before this court is defendants' motion to dismiss Count I for failure to state a claim upon which relief may be granted. Fed. R.Civ.P. 12(b)(6). For the reasons set forth below, we dismiss the complaint in its entirety.

**I. Factual Background** [1]

The Fund is an employee welfare benefit plan established pursuant to Title I, Section 3 of ERISA. In May, 1990, Joseph Klimas ("Klimas"), a Fund beneficiary, sustained in-

---

1. We will, of course, take all well-pleaded facts as true and will draw all reasonable inferences therefrom in favor of the plaintiffs. *Balabanos v.*

*North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488 (N.D.Ill.1988).

juries in an automobile accident. Pursuant to its plan, the Fund paid over $80,000 to cover Klimas' medical expenses. Prior to receiving these benefits, Klimas signed a subrogation agreement in which he promised to reimburse the Fund in the event he recovered any monies from the responsible third party.[2]

Notwithstanding the Fund's coverage of his expenses, Klimas hired Gleason & Fritzshall to sue Joseph Walski, the man responsible for his injuries. Eventually, in December, 1991, Gleason negotiated a $50,000 settlement of the claims against Walski, but failed to notify the Fund or gain its approval. Later that month, Gleason cashed the check, made out to Gleason & Fritzshall, Klimas, and the Fund, presenting it to the bank with his own signature and those of Klimas and Perry Bronson ("Bronson"), as an agent of the Fund. The Fund alleges that Bronson's signature was forged, and that in any event Bronson was not authorized to endorse checks on behalf of the Fund.

The Fund did not learn of the settlement until April, 1992, and did not receive any reimbursement until October, 1992, when Gleason sent a $13,000 check to the Fund, ostensibly representing the Fund's share of the settlement.

## II. Discussion

In Count I, the Fund alleges that defendants owed it fiduciary duties resulting from Gleason & Fritzshall's representation of a Fund beneficiary and their decision to take control of settlement proceeds that belonged to the Fund. Defendants seek to dismiss

this count, arguing that they are not fiduciaries under ERISA, and thus could not have breached any fiduciary duties.

ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Courts have held that subsection (i) confers fiduciary responsibilities in two sorts of circumstances—those where a party becomes a fiduciary by virtue of control he legitimately wields, regardless of any intent to create such a relationship,[3] and those where a party possessing some measure of legitimate control over plan assets exceeds his grant of authority and exercises discretionary control over those assets. *See, e.g., Yeseta v. Baima,* 837 F.2d 380 (9th Cir.1988) (despite fact that company attorney was not authorized to dispose of plan assets, he was authorized to write checks on various company accounts, and court found fiduciary duty in light of the fact that he in fact made withdrawals from the plan); *Olson v. E.F. Hutton & Co.,* 957 F.2d 622 (8th Cir.1992) (account representative authorized to invest pension assets in certificates of deposit found to be a fiduciary where he made unauthorized excessive transactions).[4] This case does not properly fall within either category.

---

**2.** The agreement contained no provision for payment of attorney's fees.

**3.** In *Blatt v. Marshall & Lassman,* 812 F.2d 810, 812–13 (2d Cir.1987), for example, a former employee of defendants' company sought to withdraw his accrued pension assets. Defendants, as heads of the company, refused to sign a form confirming plaintiff's employment status, thereby preventing his recovery. There, the court distinguished between the exercise and possession of authority, and concluded that defendants were fiduciaries because, regardless of any party's intent to grant defendants the authority to block a beneficiary's access to pension funds, they exercised actual control over the disposition of assets. Likewise, in *Leigh v. Engle,* 727 F.2d 113, 133 (7th Cir.1984), defendants owned a company whose directors had the power to appoint and

remove pension trust administrators. The Seventh Circuit ruled that defendants were fiduciaries to the extent that, by virtue of their ability to appoint their company's directory, they controlled the selection and retention of plan administrators.

**4.** One notable exception to this rule can be found in the consistent approach courts have taken to actions banks perform in their depository capacity. In *O'Toole v. Arlington Trust Co.,* 681 F.2d 94 (1st Cir.1982), for an egregious example, plaintiffs argued that the defendant bank breached fiduciary duties when it used pension funds on deposit at the bank to offset outstanding loans. Plaintiffs' contended that the bank's actual control over pension assets rendered it a fiduciary under ERISA. The *O'Toole* court disagreed,

■ In *Chapman v. Klemick*, 750 F.Supp. 520 (S.D.Fla.1990), a factually similar case on which plaintiffs rely, the court reasoned that settlement proceeds became plan assets pursuant to the subrogation agreement, and concluded that the attorney exercised "discretionary control respecting ... disposition of assets" when he decided how to disburse those proceeds. Unlike *Chapman*, however, plaintiffs here do not, and apparently cannot, allege that defendants ever lawfully controlled the settlement proceeds.[5] Instead the allegations make clear that the settlement check was made out to Klimas, Gleason & Fritzshall, *and* the Fund. Accordingly, all three signatures were required to negotiate the check and access the money, as evidenced by the forgery of Bronson's signature. Absent any initial authority or control over plan assets, no basis exists for finding a fiduciary relationship. *See Hotel Employees Union Welfare Fund v. Gentner*, 815 F.Supp. 1354, 1358 n. 4 (D.Nev.1993) (Court found that attorney who represented plan beneficiary subject to subrogation agreement was not a fiduciary under ERISA, but noted that its analysis "might very well change if, for example, the attorney held the entire settlement in trust for the client, or in some other manner exerted complete control over the settlement funds."). Accordingly, we grant defendants' motion to dismiss Count I.[6]

This decision, moreover, makes sense. In *Hotel Employees*, the court articulated three problems inherent in finding that an attorney who represents a beneficiary subject to a subrogation agreement is a fiduciary. First, by the plaintiffs' logic, any recipient of settlement funds, including parties with liens on the proceeds, would exercise discretionary authority over fund assets and would have to

be considered fiduciaries. The court properly rejected the notion that Congress intended such a broad definition of "fiduciary" in drafting ERISA.

■ Second, the court ruled that the plaintiffs' reasoning would serve to render any attorney who exercised control over fund assets a fiduciary, regardless of whether he knew he was exercising authority over such assets. Spurning such an outcome, the court held that more than blind control must be established before fiduciary duties could be imposed. We agree with, and the caselaw supports, the conclusion that not all parties who exercise control over plan assets automatically become fiduciaries. We cannot imagine, for example, that a thief who seizes trust assets, even knowingly, renders himself a fiduciary. While his actions clearly subject him to penalties, they properly stem from sources other than ERISA. More sensibly, a party must be in some position of trust and responsibility before fiduciary duties may accrue.

Finally, the court opined that holding a beneficiary's attorney to be a fiduciary in these circumstances would create an unacceptable conflict of interest, requiring an attorney to protect his client's interests as well as a fund's potentially adverse interests. While the Seventh Circuit has held that the ERISA definition of "fiduciary" does not necessarily exclude from fiduciary status all individuals who might find themselves confronted with a dual role or dual loyalties, such a quandary need not be endured here. *Mutual Life Ins. Co. of New York v. Yampol*, 840 F.2d 421, 426 n. 6 (7th Cir.1988).

---

holding that the bank possessed none of the discretionary responsibilities envisioned by the statute as creating attendant duties and liability, and thus could not be considered a fiduciary. *Id.* at 96.

5. While the *Chapman* court did not discuss the basis for its conclusion that the defendant attorney exercised control over the settlement proceeds, it nonetheless declared that such control resided in the attorney's hand.

6. The parties in this case do not dispute that the settlement proceeds constituted Fund assets.

This is not to say that no such argument could be made. Although the subrogation agreement remained silent on the issue of attorney's fees, it may be that Gleason & Fritzshall could rightfully lay claim to part of the settlement proceeds by virtue of services rendered (although to escape any possible ERISA liability, it would have to be established that they converted no more than the amount to which they were entitled). Because the parties do not raise this issue, however, we need not address it. Moreover, any decision on the issue would not affect our ruling.

### III. Conclusion

For the foregoing reasons, we grant defendants' motion to dismiss Count I of the complaint. Furthermore, since Count II sets forth a claim for common law forgery and conversion, it raises no independent federal question and must be dismissed. *See Simkunas v. Tardi,* 930 F.2d 1287 (7th Cir.1991) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). It is so ordered.