Joseph F. O'TOOLE & Marjorie C. O'Toole, Plaintiffs, Appellants,

v.

ARLINGTON TRUST COMPANY, Defendant, Appellee.

Nos. 81–1861, 82–1042.

United States Court of Appeals, First Circuit.

Argued May 5, 1982.

Decided June 29, 1982.

Rehearing Denied July 26, 1982.

David Berman, Medford, Mass., for plaintiffs, appellants.

Ivor C. Armistead, III, Boston, Mass., with whom Widett, Slater & Goldman, P. C., Boston, Mass., was on brief, for defendant, appellee.

* Of the Sixth Circuit, sitting by designation.

Before COFFIN, Chief Judge, PHILLIPS,* Senior Circuit Judge, BOWNES, Circuit Judge.

COFFIN, Chief Judge.

Appellants, Joseph O'Toole and his wife Marjorie O'Toole, appeal the district court's dismissal of the case for lack of either a question of federal law or diversity jurisdiction.

Appellants are officers of three nursing homes in Massachusetts and trustees of the pension funds established for the employees of each. These funds were deposited with appellee, Arlington Trust Co., which had also extended various loans, guaranteed by appellants, to the three nursing homes. When appellee learned that the three corporations were in severe financial difficulty, it used the pension funds that were in its keeping to offset the outstanding corporate loans. Appellants filed an action in district court to enjoin the offset, alleging jurisdiction based upon the jurisdictional provision of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, the existence of a federal question of law, 28 U.S.C. § 1331, and diversity of citizenship, *id.* § 1332.

*Jurisdiction Based Upon Federal Law*

■ Appellants argue that this case presents a question of federal law over which the federal courts have jurisdiction because the pensions that the bank used to offset were funds protected by ERISA, 29 U.S.C. § 1001, *et seq.* ERISA specifically gives a district court exclusive jurisdiction to hear a case if a participant, beneficiary or fiduciary of an ERISA pension plan is claiming breach of the duties of a fiduciary, *id.* § 1132(a)(2), or if any one of these individuals seeks to enjoin an act that violates a provision of ERISA, *id.* § 1132(a)(3)(A). As fiduciaries who have statutory authority to sue, appellants rely on both of these sections to assert jurisdiction.

They argue first that jurisdiction existed under § 1132(a)(2) because appellee had a fiduciary duty that it breached by offset-

ting from the pension funds. We cannot find, however, that the bank is a fiduciary within the meaning of the statute. ERISA defines an individual as a fiduciary to the extent he exercises discretionary control or authority over the plan, its assets, or its administration or renders investment advice. *Id.* § 1002(21)(A). In addition, it creates an extremely specific scheme of duties and liabilities for fiduciaries. *See id.* § 1104 (fiduciary duties); § 1105 (liability for breach of co-fiduciary); § 1106 (prohibited transactions by fiduciaries). Appellee's responsibilities as the depository for the funds do not include the discretionary, advisory activities described by the statute— activities which in fact were performed by appellants. In the absence of these activities, it would be unfair to impose on appellee the responsibilities and liabilities created by the statute for fiduciaries. *See Robbins v. First American Bank of Virginia*, 514 F.Supp. 1183, 1189–91 (N.D.Ill.1981); *cf. Hibernia Bank v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 411 F.Supp. 478, 489–90 (N.D.Cal.1976).

Almost conceding this point, appellants argue in the alternative that the bank should still be considered a fiduciary because the Supreme Court has recognized that a bank that is aware that it holds a trust fund may become liable as a fiduciary. *See Central National Bank v. Connecticut Mutual Life Ins. Co.*, 104 U.S. 54, 26 L.Ed. 693 (1881). This case, decided long before ERISA and in a different context, does not present any reason to construe ERISA more broadly than its terms would otherwise allow. To the extent that appellants are also arguing that this case requires the court to take jurisdiction under 28 U.S.C. § 1331, quite apart from ERISA, we are unpersuaded. This common law case predates *Erie Railroad Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and does not now create a right that is viable under the "laws of the United States", 28 U.S.C. § 1331.

As noted above, ERISA contains a second jurisdictional provision that gives the district court jurisdiction if a party seeks to enjoin a violation of a provision of ERISA, 29 U.S.C. § 1132(a)(3)(A). One substantive provision of ERISA states that "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." *Id.* § 1056(d)(1). Appellants point to a Sixth Circuit case holding that this provision prevents garnishment of an individual's benefits to argue that the provision should also be interpreted to prevent setoffs by a depository bank. *See General Motors Corp. v. Buha*, 623 F.2d 455, 460–63 (6th Cir. 1980). *See also Commercial Mortgage Insurance Inc. v. Citizens National Bank of Dallas*, 526 F.Supp. 510 (N.D.Tex. 1981). So interpreted, the provision would create a provision that would form the basis for jurisdiction under § 1132(a)(3)(A).

Although we need not rule on the garnishment issue, we note that the extension of the prohibition against alienation to garnishment is at least plausible. It is a short step from saying that an individual beneficiary should not be allowed to alienate or assign his benefits to saying that one of his creditors similarly should not have the right to attach those benefits. To say, however, that under this provision the depository of the entire fund is prohibited from levying on the fund for security purposes requires not a step, but a leap to a different plane. The focus must be changed from the protection of the benefits of each person, viewed separately, to the protection of all of those benefits, viewed in the aggregate. While such a change in focus might result in laudable protection, it is not supported by the wording of § 1056(d), the statutory prohibition. The prohibition is directed at "benefits provided", not the corpus of the fund; and the potential for assignment or alienation, which is limited by the prohibition, would seem to lie with the beneficiary, not the depository. In addition, § 1056(d) allows for assignment and alienation in very limited circumstances—an allowance that would apply to beneficiaries, not holders of the corpus. We would be hard-pressed to find that § 1056(d) was intended to do more than address the individual beneficiary's right of access to his share of the fund.

Consequently, it does not serve as a provision that gives rise to jurisdiction in this instance.[1]

Appellants' most superficially appealing argument is their policy argument that Congress, when it passed ERISA, intended to create comprehensive federal protection for the funds that would be molded in ERISA's statutory form; it could not have intended to leave those funds vulnerable to invasion, with recourse only to the varying standards of the many state courts. But the statutory grant of federal jurisdiction is limited, and we have found it to be defeated in this instance for the reasons discussed above. The need for uniformity alone is not enough. If we were to allow the uniformity argument to run its course, federal jurisdiction would exist whenever an incursion of a fund of any sort—by theft or by misappropriation, for example—occurred. Such was not the intent of Congress. When explaining the proposed legislation, both the House and Senate Reports stated that:

> "Because of the interstate character of employee benefit plans, the Committee believes it essential to provide for a uniform source of law in the areas of vesting, funding, insurance and portability standards, for evaluating fiduciary conduct, and for creating a single reporting and disclosure system in lieu of burdensome multiple reports." H.R.Rep.No.533, 93d Cong. 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Ad. News 4639, 4655; S.Rep.No.406, 93d Cong. 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Ad. News 4838, 4871.

These areas are limited in scope and coincide with the specific standards of conduct established by the statute. In sum, we find no reason to conclude that ERISA explicitly or impliedly would extend federal jurisdiction to appellants' claim that the depository improperly invaded the corpus of the fund.

### Diversity Jurisdiction

We also affirm the district court's finding that it did not have diversity jurisdiction under 28 U.S.C. § 1332 because appellants and appellee were "citizens" of Massachusetts on November 14, 1980, when appellants filed their complaint. Only appellants' place of domicile was contested.

Appellants alleged in the complaint that they were citizens of North Palm Beach, Florida. In affidavits countering appellee's motion to dismiss, they elaborated by stating that they had purchased a condominium in Florida in 1974 with the intention of living in Florida, had in fact made it their domicile, and had registered to vote in Florida in July, 1980. Appellee had presented evidence that appellants rented an apartment in North Andover, Massachusetts; that they kept a car in Massachusetts; that they were the sole officers of the three Massachusetts nursing homes; and that the bank official with whom appellants dealt for corporate purposes believed that appellants resided in North Andover and had no record of any out-of-state address. Appellee also submitted copies of reports for the three nursing homes required to be filed annually with the state. Two of the reports were filed in December, 1980, and the third in March, 1981. Each, signed ostensibly[2] by Mr. O'Toole under penalty of perjury, listed the domicile of appellants, as officers of the corporation, as North Andover, Massachusetts.

The district court found appellants to be citizens of Massachusetts at the time the suit was filed, placing particular weight on the corporate reports by finding that the statement of domicile contained in the re-

---

1. Appellants claim, in passing, a violation of § 1106(b)(1), which states that a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account", and argue that this violation allows them to seek relief in federal court. Having found, however, that appellee does not meet the predicate condition of being a "fiduciary", we find no merit in this argument.

2. Appellants claim that the signatures were forgeries, but this claim was not raised when the district court was considering the motion to dismiss and consequently plays no part in our review of the evidence.

ports—filed after the filing of the complaint—rebutted appellants' claim that they had previously changed their domicile to Florida.

■ Appellants' first argument is procedural: that they had a right to an evidentiary hearing on the jurisdictional facts once it became evident that the citizenship issue was in dispute. We cannot agree. First, appellants did not request a hearing when the motion to dismiss was filed. Second, the court was under no obligation to require an evidentiary hearing. The trial court has the right to determine the procedures it will employ to decide a jurisdictional issue, *see Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 728–29, 83 L.Ed. 1111 (1939), and its determination of procedure will be found lacking only if it is an abuse of discretion. We find no such abuse. Appellants had ample opportunity to present the court with facts supporting their allegation of citizenship in Florida when they responded to appellee's motion to dismiss. *See Tanzymore v. Bethlehem Steel Corp.*, 457 F.2d 1320, 1323 (3d Cir. 1972). They chose to submit only their own affidavits, which contained only the facts recited above. Any failure on the part of appellants to fully avail themselves of the opportunity to present evidence to the court should not now be blamed upon the court's choice not to require an evidentiary hearing.

■ Proceeding to appellants' substantive claim that the court should not have concluded that they were domiciled in Massachusetts, we note first that the burden of proof is on the plaintiff to support allegations of jurisdiction with competent proof when the allegations are challenged by the defendant. The district court's determination of whether plaintiff has met that burden will be reversed only if clearly erroneous. *Hawes v. Club Ecuestre el Comandante*, 598 F.2d 698, 702 (1st Cir. 1979).

■ We cannot find to be clearly erroneous the district court's conclusion that appellants' evidence of intent to reside in Florida was insufficient when countered by the corporate reports and other evidence of appellants' activity in Massachusetts. The corporate reports were admitted into evidence without objection as certified copies of public records.[3] Although the term "domicile" on the corporate filing form may not have the exact legal meaning that it has in the § 1332 context, appellants' designation of domicile in Massachusetts on the forms is strong evidence that appellants have the burden of overcoming. The paucity of appellants' presentation of evidence justifies the district court's conclusion that they had not met that burden.

■ Lastly, appellants appeal from the district court's denial of their motion to vacate the court's order to dismiss for lack of jurisdiction. They sought reconsideration on the grounds that the corporate records were not properly certified and that Mr. O'Toole's signature on the reports was a forgery. *See* notes 2 & 3. Considered as a motion to amend the judgment under Fed.R.Civ.P. 59(e), the motion was not timely filed. As a motion for relief from the judgment under Fed.R.Civ.P. 60(b), it does not put forward grounds for which relief can be granted: mistake, surprise, excusable neglect, or newly discovered evidence. The arguments made to support a motion to vacate could just as easily have been made at the time the court considered the motion to dismiss.

*Affirmed.*

---

**3.** Appellants argued in a motion to vacate and on appeal that the records were not admissible under Fed.R.Evid. 902 because they were not properly certified. They point to the fact that the attestation that the copy was a true copy was not under seal and that the signature of the custodian was a facsimile signature rather than an original signature. This argument was not properly before the district court when presented in the motion to vacate, *see infra*. It is not properly before the court on appeal because appellants did not object when the evidence was introduced and have not proven plain error on appeal. Fed.R.Evid. 103(d).