**Courtney J. LUNDQUIST,**
**Plaintiff, Appellant,**

**v.**

**PRECISION VALLEY AVIATION, INC.,**
**et al., Defendants, Appellees.**

**No. 91-1276.**

United States Court of Appeals,
First Circuit.

Submitted July 15, 1991.

Decided Oct. 1, 1991.

Richard L. Blumenthal and Silverman & Kudisch, Boston, Mass., on brief, for plaintiff, appellant.

Michael Kaplan and Preti, Flaherty, Beliveau & Pachios, Portland, Me., on brief, for defendants, appellees.

Before BREYER, Chief Judge, and SELYA and CYR, Circuit Judges.

PER CURIAM.

Plaintiff-appellant Courtney Lundquist filed an action on March 20, 1987 in the District of Massachusetts against defendants-appellees Precision Valley Aviation, Inc., Winnipesaukee Airlines, Inc., Walter Fawcett, and Susan Fawcett, to recover on promissory notes relating to a sale of stock in Winnipesaukee Airlines, Inc., by Lundquist to defendants. Lundquist's complaint alleged federal jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332. The complaint did not allege citizenship but did state that Lundquist resided in Arlington, Massachusetts.

On November 5, 1990, defendants filed a motion to dismiss for lack of subject matter jurisdiction on the ground that complete diversity of citizenship did not exist. The motion, which included affidavits and other evidentiary documents, alleged that Lundquist, like the defendants, was a citizen of New Hampshire. Lundquist filed an objection to the motion to dismiss, including affidavits, in which he alleged that he was a citizen of Florida. Lundquist asked that the district court permit him to amend his complaint to assert Florida citizenship.

The district court held oral argument on the motion to dismiss on December 6, 1990, and took the matter under advisement. At that hearing, when the court inquired whether it should schedule an evidentiary hearing on the matter, Lundquist's counsel opted to rest on his affidavits. On Febru-

ary 19, 1991, the court heard further argument on the motion to dismiss. The court granted the motion in a brief February 22, 1991 order, finding a lack of complete diversity of citizenship. Lundquist appeals. We affirm.

Under 28 U.S.C. § 1332(a)(1), there is diversity of citizenship if the plaintiff is a "citizen" of a different state than all of the defendants. *Sweeney v. Westvaco Co.*, 926 F.2d 29, 32–33, 41 (1st Cir.1991). "Citizenship" in a state is the equivalent of "domicile." *Valedon Martinez v. Hospital Presbiteriano de la Comunidad, Inc.*, 806 F.2d 1128, 1132 (1st Cir.1986). Where a party changes domicile, "[d]omicile at the time suit is filed [here, March 20, 1987] is the test and jurisdiction once established is not lost by a subsequent change in citizenship." *Id.* (quoting *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir.1979)). Moreover, "the burden of proof is on the plaintiff to support allegations of jurisdiction with competent proof when the allegations are challenged by the defendant." *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 98 (1st Cir.1982).

Defendants' primary evidence that Lundquist was a New Hampshire citizen was as follows: (1) that Lundquist owned real property in Melvin Village, New Hampshire and paid taxes on that property; (2) that Lundquist maintained a functioning telephone in Melvin Village; (3) that Lundquist had had a New Hampshire driver's license since 1986; (4) that Lundquist was registered to vote in New Hampshire from 1976 until at least 1990, and has actually voted in New Hampshire during that time; and (5) that Lundquist or Lundquist's wife stated his address to be in Melvin Village, New Hampshire on 1986, 1987, and 1988 annual reports filed with the New Hampshire Secretary of State by Amphibair, Inc., a corporation of which Lundquist was sole director, President, and Treasurer, and Lundquist's wife was Secretary.

Lundquist presented affidavits of himself and his wife setting forth primarily the following evidence that Lundquist was a citizen not of New Hampshire, but of Florida: (1) that Lundquist purchased real property in Florida and moved there in 1984, keeping his New Hampshire property as a summer home; (2) that since 1984 Lundquist has maintained several Florida bank accounts; (3) that Lundquist has a Florida driver's license; (4) that Lundquist's wife has run a horse farm continuously in Florida since 1984; (5) that Lundquist and/or his wife belong to several social organizations in Florida; (6) that Lundquist has summered in New Hampshire, in some years spending as little as two to three weeks there; (7) that all of Lundquist's personal belongings are in Florida except for certain bank accounts and for sparse furnishings in the Melvin Village, New Hampshire residence; and (8) that Lundquist listed a Florida residence on his federal tax returns for 1987, 1988, and 1989.

The district court, in its brief order finding New Hampshire citizenship, noted that Lundquist had lived in Florida at material times. The court placed weight, however, on Lundquist's voting registration in New Hampshire and on Lundquist's representations of New Hampshire residence on corporate filings. The district court ruled,

It is undisputed that, although the plaintiff, Courtney Lundquist, lived in Florida at material times herein, he continued to exercise his vote in general elections in New Hampshire, the residence of the other defendants, and to represent that he was a resident of New Hampshire for the purpose of exercising his franchise therein. Moreover, it is undisputed that Mr. Lundquist, at times material herein, continued to represent himself as a resident of New Hampshire in the corporate filings of Amphib Air, a corporation controlled by Lundquist which figures in the financial dealings among the parties.

As an initial matter, Lundquist attacks this district court ruling by asserting that the district court applied the wrong legal standard. Lundquist correctly notes that the relevant standard is "citizenship," *i.e.*, "domicile," not mere residence; a party may reside in more than one state but can be domiciled, for diversity purposes, in only one. Because the district court did not

expressly use the term "citizenship" or "domicile" in its order, but instead twice stated that Lundquist represented himself to be "a resident of New Hampshire," Lundquist argues that the district court improperly based its ruling on a finding of mere residence in New Hampshire.

The district court's order, however, is silent as to the legal analysis employed by the district court. It discusses only the facts of the case. The district court's references to residence were employed in the course of setting forth findings as to the facts. Since residence is highly relevant to the issue of domicile, the district court's discussion was fully consistent with application of the correct legal standard. Nothing else in the district court's order, beyond this mere accident of language, would suggest that the district court employed the wrong legal standard. We cannot find that the district court committed legal error in the absence of any significant indication that it did so.

Furthermore, we have reviewed the transcripts of December 6, 1990 and February 19, 1991 district court hearings where the jurisdictional issue was discussed. At the December 6 hearing the district court, after discussing competing claims of residence, asked defendants' counsel, "But what contact from your affidavits evidences domicile in New Hampshire?" Here the district court made quite clear the distinction between domicile and mere residence. Our review of the district court's order in the light of the transcripts leaves us in no doubt that the district court applied the correct legal standard.

█ The remaining question is whether the district court applied that standard correctly. The district court's determination that Lundquist was a citizen of New Hampshire at the time he commenced the action "is a mixed question of law and fact and as such may not be set aside unless clearly erroneous." *Valedon Martinez, supra,* 806 F.2d at 1132; *O'Toole, supra,* 681 F.2d at 98; *Hawes, supra,* 598 F.2d at 702; *Lyons v. Salve Regina College,* 565 F.2d 200, 203 (1st Cir.1977), *cert. denied,* 435

U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978).

" '[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 [105 S.Ct. 1504, 1511, 84 L.Ed.2d 518] (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 [68 S.Ct. 525, 542, 92 L.Ed. 746] (1948)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson,* 470 U.S. at 573–74 [105 S.Ct. at 1511].

*Valedon Martinez, supra,* 806 F.2d at 1132. As Lundquist points out, the Supreme Court has stated that "[t]he same 'clearly erroneous' standard applies to findings based on documentary evidence as to those based entirely on oral testimony, but the presumption [of correctness] has lesser force in the former situation than in the latter." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 500, 104 S.Ct. 1949, 1959, 80 L.Ed.2d 502 (1984) (citation omitted). Nonetheless, as the Supreme Court in *Bose Corp.* made clear, the clearly erroneous standard of review does govern review of factual findings based on documentary evidence, whatever the nuances.

█ There are, of course, many factors that courts have deemed relevant to the determination of a party's domicile.

While it is impossible to catalogue all factors bearing on the issue, they include the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church mem-

bership and places of business or employment.

1 Moore's Federal Practice ¶ 0.74[3.-3], at 788 (2nd ed. 1991). Just as no single factor is controlling, *id.* at 787–88, domicile need not be determined by mere numerical comparison of the number of factors that may appear to favor each side of the issue.

■ In the instant case there is no question that a number of important factors do suggest domicile in Florida. For example, defendants introduced nothing to contradict Lundquist's assertion that most of Lundquist's personal property is in Florida, Lundquist has several bank accounts in Florida, Lundquist belongs to social organizations in Florida, and Lundquist listed a Florida residence on his federal tax returns for relevant years. Although Lundquist stated he had a Florida driver's license, defendants introduced uncontradicted evidence that he also had a New Hampshire license. On the other hand, the factors relied on by the district court—Lundquist's registration to vote and actual voting in New Hampshire, and his representation of New Hampshire residence on corporate reports to the New Hampshire Secretary of State—are also weighty ones.

For example, "some opinions have given special weight to the state in which a party is registered to vote, occasionally stating that such registration raises a presumption of domicile." *Id.* at 787, and cases cited therein. We need establish no such presumption to agree that Lundquist's voting registration carries weight. The applicable New Hampshire statute provides,

> Every inhabitant of the state, having a fixed and permanent established domicile, ... shall have a right at any meeting or election, to vote in the town, ward, or unincorporated place in which he is domiciled. The determinant of one's domicile is a question of factual physical presence incorporating an intention to reside for an indefinite period. This domicile is the voter's residence to which, upon temporary absence, he has the intention of returning. This domicile is that place in which he dwells on a con-

tinuing basis for a significant portion of each year.

N.H.Rev.Stat.Ann. 654:1. Given this statute, Lundquist's voting behavior is tantamount to a representation of New Hampshire domicile to voting officials.

In addition, we have held in *O'Toole, supra,* 681 F.2d at 98, that a party's own representation of domicile on corporate reports is "strong evidence." In *O'Toole,* appellants had filed corporate reports with the state of Massachusetts listing their "domicile" as in Massachusetts. We upheld as not clearly erroneous the district court's determination of Massachusetts domicile, stating,

> Although the term "domicile" on the corporate filing form may not have the exact legal meaning that it has in the § 1332 context, appellants' designation of domicile in Massachusetts on the forms is strong evidence that appellants have the burden of overcoming. The paucity of appellants' presentation of evidence justifies the district court's conclusion that they had not met that burden.

*Id.*

In the instant case, to be sure, the contrary evidence as to domicile is stronger than it was in *O'Toole.* Also, neither the corporate report forms nor the governing New Hampshire statutes use the word "domicile." New Hampshire law requires that at least one director be an "actual resident" of New Hampshire, N.H.Rev. Stat.Ann. § 296:3, and that the corporation *"continuously* maintain in this state a secretary, ... who shall be an individual resident in this state...." N.H.Rev.Stat.Ann. § 293–A:12 (emphasis added). Again, Lundquist was the corporation's sole director, and Lundquist's wife held the office of Secretary. Thus, although Lundquist's and his wife's representations on these corporate reports cannot be said to have been representations of "domicile," they were representations not only of mere residence but of continuous, "actual" residence. Accordingly, while *O'Toole* certainly is not on all fours with this case, *O'Toole* does support the proposition that Lundquist's representations to state officials on corporate

reports, as well as for voting purposes, are entitled to significant weight.

Given the substantial evidence on both sides of the issue, we cannot say that the district court committed clear error in making the determination that it did. Although Lundquist in his affidavit put forth strong evidence of an intent to remain in Florida, Lundquist's voting registration and representations on corporate reports constitute significant countervailing evidence of intent to remain in New Hampshire and maintain New Hampshire domicile. On the entire evidence, we are not "left with the definite and firm conviction that a mistake has been committed." *Anderson, supra,* 470 U.S. at 573, 105 S.Ct. at 1511. As a result, the district court's ruling must stand.

The judgment of the district court is *affirmed.*