USCA1 Opinion

 

 October 25, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1633 LIL IZQUIERDO, ET AL., Plaintiffs, Appellants, v. DENTON CONSTRUCTION, CO., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, Chief U.S. District Judge] _________________________ ____________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, and ____________________ Boudin, Circuit Judge. _____________ ____________________ Gabriel I. Penagaricano on brief for appellants. _______________________ Gloria L. Lebron Nieves and Cobian & Valls on brief for __________________________ _________________ appellees. ____________________ ____________________ Per Curiam. Plaintiffs-appellants appeal the dismissal __________ of their action for lack of diversity jurisdiction, as well as the denial of their motion for reconsideration. For the following reasons, we affirm. I. This is a personal injury action arising out of a motor vehicle accident which occurred in Puerto Rico. Plaintiffs- appellants are a married couple, Robert Campbell and Lil Izquierdo, and their three children, Robert, Jamilah, and Kirsa Campbell Izquierdo. On November 29, 1991, Lil Izquierdo and the three children were travelling together in an automobile when it collided with a motor vehicle driven by Rosario Rosa Acevedo. Lil Izquierdo was rendered unconscious by the accident and remained in a coma until January 6, 1992. On November 30, 1992, appellants brought a lawsuit in the United States District Court for the District of Puerto Rico against Rosario Rosa Acevedo, Denton Construction Company, Integrand Assurance Company, and the Puerto Rico Highway Authority. The amended complaint, which invokes diversity jurisdiction under 28 U.S.C. 1332(a)(1), alleges that all plaintiffs are citizens of New York and all defendants are citizens of Puerto Rico. On January 28, 1994, appellee Denton Construction Company moved to dismiss the action, claiming that diversity jurisdiction is lacking because Lil Izquierdo and the children were domiciled in Puerto Rico at the time of the accident. Appellee supported its contentions with, inter _____ alia, excerpts from a deposition of Lil Izquierdo which ____ revealed that she had been living in Puerto Rico for approximately eleven years. She and her husband had moved to Puerto Rico from New York after the birth of their third child, Kisra. They voted and worked in Puerto Rico. After some years, Robert Campbell moved back to New York because he was able to find a better job there. Lil Izquierdo remained in Quebradillas, Puerto Rico with the children and worked as a school teacher. In opposition, appellants pointed out that the relevant date for determining whether diversity jurisdiction exists is the time of filing the complaint. See, e.g., Valedon ___ ____ _______ Martinez v. Hospital Presbiteriano de la Comunidad, 806 F.2d ________ _______________________________________ 1128, 1132 (1st Cir. 1986). Appellants contended that Lil Izquierdo and the children had joined Robert Campbell in New York in January 1992, and that the entire family was domiciled there at the time the complaint was filed. Although since filing the complaint, Lil Izquierdo and the children had returned to Quebradillas, and Lil Izquierdo had returned to her former position as a school teacher, appellants alleged that the return was solely for the purposes of furthering Lil Izquierdo's rehabilitation and attending to the lawsuit. Appellants supported their allegations with a sworn statement, dated February 7, 1994, attesting that Lil Izquierdo and her children had changed their "residence" to New York in January 1992 and planned to return there after Lil Izquierdo's rehabilitation was -3- completed. Appellants also submitted excerpts from the deposition of Lil Izquierdo in which she testified that after becoming conscious and beginning her rehabilitation, she had been unable to find a job in the United States and had returned to Puerto Rico because she needed the "resource" and her former supervisor was willing to let her work part-time on a trial basis. Although she and the children were living in their former home, Lil Izquierdo testified that she no longer owned it and that it was now "under the bank's name." On April 5, 1994, the district court found that diversity is lacking, at least as to Lil Izquierdo, based, in part, on her deposition testimony which suggested that "after the accident she was packed up and taken off to the States." The court observed that at no point in the excerpts submitted did Lil Izquierdo express any desire to make New York her domicile, even after she arrived. The court also noted the absence of "any evidence traditionally evaluated that could support a change in domicile for any of the three plaintiffs domiciled in Puerto Rico." Judgment dismissing the case without prejudice was entered on April 8, 1994. On April 20, 1994, appellants filed a motion for reconsideration supported by a second sworn statement, dated May 2, 1994, in which Lil Izquierdo described her residence in New York as "true, fixed and permanent" and her return to Puerto Rico as "temporary." The district court denied the -4- motion stating that the language and content of the statement "are too stilted and constructed to be more than a belated attempt to recreate a version of intent after the fact." The court also stated: If it is plaintiffs next strategy to physically relocate once again to New York, in a belated effort to once again prove her intent to be domiciled there, we remind them that the moment for consideration was the first time that she was living there. All other considerations of domicile, voter registration, property ownership, driver's license, organizational ties, employment, and the like, as well as the ties cut upon leaving Puerto Rico were never demonstrated. Appellants filed a timely notice of appeal from the dismissal and from the denial of their motion for reconsideration. II. Federal jurisdiction under 28 U.S.C. 1332(a)(1) requires that the "matter in controversy" be between "citizens of different states." For purposes of diversity, state citizenship is ordinarily equated with domicile. Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st ______________ _______________ Cir. 1988). "A person's domicile `is the place where he has a true, fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning.'" Id. (quoting C. Wright, A. Miller & E. Cooper, 13B Federal ___ _______ Practice & Procedure 3612, at 526 (1984)). In order to ____________________ change domicile, a person must (1) physically relocate to a new state; and (2) intend to remain there. See Bank One, ___ __________ Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992). The ___________ ______ -5- determination of domicile is a mixed question of fact and law, and a district court's finding will not be set aside unless clearly erroneous. Id. at 51. ___ Appellants contend that the district court erred in finding that Lil Izquierdo never changed her domicile to New York. We disagree. We note as an initial matter that once challenged, appellants bore the burden of supporting their allegations of jurisdiction with competent proof. See ___ O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. _______ ____________________ 1982). Since it is undisputed that Lil Izquierdo was residing in New York at the time the complaint was filed, appellants needed only to prove that she intended to remain there. Appellants, however, presented no evidence whatsoever bearing on the factors traditionally relevant to determining such intent.1 For example, there is no evidence that Lil Izquierdo, who voted in Puerto Rico, changed her voting registration to New York. See Lundquist v. Precision Valley ___ _________ ________________ Aviation, Inc., 946 F.2d 8, 12 (1st Cir. 1991) (noting that ______________ ____________________ 1. These factors include: the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment. Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 11- _________ _______________________________ 12 (1st Cir. 1991) (quoting 1 Moore's Federal Practice, _________________________ 0.74[3.-3], at 788 (2d ed. 1991)). -6- the place a person is registered to vote is a "weighty" factor in determining domicile). Nor is there any other objective evidence in the record that Lil Izquierdo established political, civic, or community ties to New York. Moreover, although appellants point out that Lil Izquierdo no longer owned her home in Quebradillas by the time she returned to Puerto Rico, the deposition excerpts reveal that she was in contact with the bank and hoped to regain ownership by making the necessary payment. Far from demonstrating that Lil Izquierdo had severed ties with Puerto Rico, such evidence suggests that she continued to view it as her home. We add that the sworn statement dated February 7, 1994, attesting to Lil Izquierdo's change of domicile and her intent to return to New York after further "rehabilitation," was conclusory and also conflicted with Lil Izquierdo's deposition testimony that she lived "on a day by day basis" and that "hopefully, something positive will happen and I'll be able to pay for the house [in Quebradillas]." Cf. Hawes ___ _____ v. Club Ecuestre El Comandante, 598 F.2d 698, 704 (1st Cir. ____________________________ 1979) (giving no weight to conclusory statements in affidavit as to intention). Given the paucity of evidence that Lil Izquierdo changed her domicile to New York, and conflicting evidence to the contrary, we cannot say that the district court committed clear error in making the determination that -7- it did. See Lundquist, 946 F.2d at 13 (upholding district ___ _________ court's ruling on diversity where evidence was conflicting); O'Toole, 681 F.2d at 98 (holding that "[t]he paucity of _______ appellants' presentation of evidence justifie[d] the district court's conclusion that they had not met [their] burden.").2 We also reject appellants' argument that the district court erred in not giving them an evidentiary hearing on the jurisdictional issue. "A district court has very broad discretion in determining the manner in which it will consider the issue of jurisdiction." Valedon Martinez, 806 ________________ F.2d at 1132. Here, appellants were given ample opportunity to present the court with facts relevant to the existence of jurisdiction. Moreover, appellants did not request an evidentiary hearing until after the case was dismissed. Under the circumstances, the district court did not abuse its discretion in deciding the issue on documentary evidence. See O'Toole, 681 F.2d at 98 ("Any failure on the part of ___ _______ appellant to fully avail themselves of the opportunity to present evidence to the court should not now be blamed upon the court's choice not to require an evidentiary hearing."). Lastly, we consider the denial of appellants' motion to reconsider. In this motion, which failed to identify the ____________________ 2. In light of our decision upholding the district court's determination that diversity is lacking "at least as to Lil Izquierdo," we need not consider whether diversity is also lacking with respect to the three children. -8- applicable procedural rule, appellants argued that the district court overlooked the first sworn statement attesting to Lil Izquierdo's intent to make New York her domicile and reached an erroneous legal conclusion. Appellants supported the motion to reconsider with the second sworn statement which made additional conclusory statements as to Lil Izquierdo's intention. It is plain from the record that the district court carefully considered these sworn statements in denying the motion for reconsideration. Moreover, for the reasons we have already articulated, we cannot find that the district court erred in reaching the legal conclusion it did. Under the circumstances, whether we construe the motion to reconsider as one under Federal Rule Civil Procedure 59(e) or 60(b), we find no abuse of discretion in its denial. See ___ Kaercher v. Trustees of Health & Hosps, Inc., 834 F.2d 31, 34 ________ ________________________________ (1st Cir. 1987) (denial of Rule 59(e) and Rule 60(b) motions subject to abuse of discretion standard on appeal).3 ____________________ 3. Contrary to the position taken by appellants, we are not persuaded that the district court's statement, in its order denying the motion for reconsideration, that "the moment for consideration was the first time that [Lil Izquierdo] was living [in New York]," constitutes a ruling in advance that appellants are barred from refiling their action in federal district court. We think that the district court's remarks are better construed as a reminder that diversity is determined as of the date an action is commenced and cannot be created by a change of domicile during the pendency of the action. In any event, we note that a dismissal for want of jurisdiction does not preclude a second action where there are subsequent developments that cure the jurisdictional deficiency in the first suit. See, e.g., Costello v. United ___ ____ ________ ______ States, 365 U.S. 265, 284-88 (1961) (holding that dismissal ______ -9- Affirmed. See 1st Cir. R. 27.1. ________ ___ ____________________ of denaturalization proceedings for defective affidavit of good cause was for lack of jurisdiction and did not bar subsequent proceeding on proper affidavit); GAF Corp. v. __________ United States, 818 F.2d 901, 913-14 (D.C. Cir. 1987) (stating _____________ that jurisdictional deficiencies may be remedied by occurrences subsequent to original dismissal); Dozier v. Ford ______ ____ Motor Co., 702 F.2d 1189, 1196 (D.C. Cir. 1983) (Wald, J., __________ dissenting) (observing that lack of complete diversity is a curable defect); 1B James W. Moore et al., Moore's Federal _______________ Practice 0.405[5] (2d ed. 1993) (stating that a dismissal ________ for want of jurisdiction does not preclude a subsequent action where in the interim facts have occurred which now establish jurisdiction). We express no opinion on whether a second action in federal court is precluded here. -10-