Karl **QUEBE** and Warren **Ricks,** Individually and on Behalf of all Others Similarly Situated, Plaintiffs,

v.

**FORD MOTOR COMPANY,** Mazda Motor of America, Inc., Fred Capdevielle, Texas Ford Dealers' Advertising Fund, Inc., South Texas Ford Dealers' Advertising Fund, Inc., and Lone Star Ford, Inc., Defendants.

No. W–95–CA–308.

United States District Court,
W.D. Texas,
Waco Division.

Dec. 11, 1995.

---

Stephen E. Harrison, II, Cherry, David, Harrison, Montez, Williams & Baird, P.C., Waco, Texas, for Plaintiffs Karl Quebe and Warren Ricks.

Jerry P. Campbell, Naman, Howell, Smith & Lee, P.C., Waco, Texas (John H. Beisner, Brian C. Anderson, Lynn E. Parseghian, O'Melveny & Myers, Washington, DC, of counsel), for Ford Motor Company, Mazda Motor of America, Fred Capdevielle, and Lone Star Ford.

Alison L. Smith, Andrew J. Logan, Vinson & Elkins, L.L.P., Houston, Texas, for South Texas Ford Dealers Advertising Fund, Inc.

R. Edward Ishmael, Jr., Baker & McKenzie, Dallas, Texas, for Texas Ford Dealers' Advertising Fund.

## ORDER

WALTER S. SMITH, Jr., District Judge.

Came on to be considered Plaintiffs' Motion to Remand and the responses thereto. After careful consideration, the Court is of the opinion that Plaintiffs' motion is meritorious and is therefore granted.

### I. Background

The Plaintiffs Karl Quebe ("Quebe") and Warren Ricks ("Ricks") filed the instant action, on behalf of themselves and others, in the 74th Judicial District Court of McLennan County, Texas, against the following Defendants: Ford Motor Company, Inc. ("Ford"), Mazda Motor of America, Inc. ("Mazda"), Fred Capdevielle, ("Capdevielle"), Texas Ford Dealers' Advertising Fund, Inc. ("Ford Advertising"), South Texas Ford Dealers' Advertising Fund, Inc. ("South Texas Advertising"), and Lone Star Ford, Inc. ("Lone Star"). The Plaintiffs are seeking economic damages resulting from an alleged defect in the rear lift hatch of Ricks' Ford Explorer and Quebe's Mazda Navajo. They have alleged numerous tort theories against the Defendants.

The Defendants removed the case to this Court on September 29, 1995. Plaintiffs filed a Motion to Remand on October 16, 1995, to which the Defendants responded on November 6, 1995.

### II. Discussion

#### A. Title 28 U.S.C. § 1332: Diversity Jurisdiction

A case may be properly removed to federal court only if the Court has original subject matter jurisdiction. *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1546 (5th Cir.1991). Jurisdiction in federal court may be based either on a federal question (28 U.S.C. § 1331) or diversity (28 U.S.C. § 1332). *Rheams v. Bankston, Wright & Greenhill*, 756 F.Supp. 1004, 1008 (W.D.Tex.

1991). In removal cases, the removing party bears the burden of proof to establish that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995). In the present case, the Defendants maintain that the Court has jurisdiction based on § 1332. Section 1332, however, is to be narrowly construed "so as not to frustrate the congressional purpose behind it: to keep the diversity caseload of the federal courts under some modicum of control." *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1044 (3rd Cir.1993).

Section 1332 authorizes original jurisdiction between "citizens of a State, and foreign states or citizens or subjects thereof." 28 U.S.C. § 1332(c)(2). Section 1332 requires that the parties be completely diverse. *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1064 (5th Cir.1992); *Getty Oil, Div. of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1258 (5th Cir.1988), *cert. denied*, 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992). In class actions, the citizenship of the parties is determined by the named representatives. *Calagaz v. Calhoon*, 309 F.2d 248, 253 (5th Cir.1962). The presence of a Texas party on each side of the suit removes diversity of citizenship as a possible basis of subject matter jurisdiction because the parties are not *completely* diverse. *Jones*, 954 F.2d. at 1064 (emphasis added).

When a party is a person, citizenship is determined by where the party is domiciled. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir.1991). Domicile is, however, more than where the party resides—it is the place a person calls home. Thus, when determining a party's domicile, a court looks to such factors as where the person resides, where he works, goes to school, pays his taxes, is registered to vote, the place of his drivers license, and location of family. *See, Lundquist*, 946 F.2d at 10. When a party is a corporation, citizenship is determined by where the corporation is incorporated and the location of the corporation's principal place of business. *Milstead Supply Co. v. Casualty Ins. Co.*, 797 F.Supp. 569, 571 (W.D.Tex.1992).

In addition to complete diversity, jurisdiction pursuant to § 1332 exists only when the matter in controversy exceeds $50,000.00. *See* Section 1332 (diversity jurisdiction exists only "where the matter in controversy exceeds the sum or value of $50,000.00 exclusive of interest and costs"). When the plaintiff's petition seeks damages less than the jurisdictional amount, the defendant must show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount. *De Aguilar*, 47 F.3d at 1412. If the petition leaves open the question of the exact amount of damages requested, the plaintiff is allowed to file affidavits clarifying the exact amount of damages sought in his petition. *Asociacion Nacional de Pescadores v. Dow Quimica de Colombia, S.A.*, 988 F.2d 559, 565 (5th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 685, 126 L.Ed.2d 653 (1994).

## B. *Attorneys' Fees: Aggregation v. Pro Rata Distribution*

Generally, attorneys' fees are not considered a part of the amount in controversy because the successful party does not typically collect his attorneys' fees. *Department of Recreation v. World Boxing Ass'n*, 942 F.2d 84, 89 (1st Cir.1991); *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir.1979). However, when attorneys' fees are provided by contract or a statute mandates or allows payment of such fees, attorneys' fees are considered part of the amount in controversy for jurisdictional purposes. *Department of Recreation*, 942 F.2d at 89; *Clark v. National Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975). Thus, when attorneys' fees are requested pursuant to a statute, they are included in determining the amount in controversy. *Foret v. Southern Farm Bureau Life Ins. Co.*, 918 F.2d 534 (5th Cir.1990), *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365 (9th Cir.), *cert. denied*, 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982).

When a plaintiff seeks damages for himself and unnamed class members, he may not aggregate the separate and distinct claims to satisfy the minimum jurisdictional

prerequisites for federal jurisdiction. *Snow v. Ford Motor Co.,* 561 F.2d 787, 789 (9th Cir.1977). The "matter in controversy" language contained in § 1332 prohibits the aggregation of such claims, and this has long been the rule. *Snyder v. Harris,* 394 U.S. 332, 336–37, 89 S.Ct. 1053, 1056–57, 22 L.Ed.2d 319 (1969). The non-aggregation rule applies whether it is the plaintiff or the defendant seeking to establish jurisdiction. *Lindsey v. Alabama,* 576 F.2d 593 (5th Cir. 1978). Thus, in class actions, the general rule has been that attorneys' fees should be distributed to the class members, both named and unnamed, on a *pro rata* basis. *Goldberg v. CPC Intern., Inc.,* 678 F.2d 1365,

1367 (9th Cir.1982); *Visintine v. Saab Auto, A.B.,* 891 F.Supp. 496, 499 (E.D.Mo.1995). Courts should not aggregate attorneys' fees when the class representatives are pursuing separate and distinct claims because doing so would be contrary to the long standing Supreme Court precedent of non-aggregation. *Snyder,* 394 U.S. at 336–37, 89 S.Ct. at 1056–57; *Gilman v. Wheat, First Securities, Inc.,* 896 F.Supp. 507, 510–11 (D.Md.1995).[1] The Defendants in the present case assert that this long standing precedent is no longer the law after *In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995).[2]

In *In re Abbott,* 51 F.3d at 526–27, the Fifth Circuit held that under *Louisiana law,*

---

1. Before discussing the Fifth Circuit's holding in *In re Abbott,* 51 F.3d 524 (5th Cir.1995) on attorneys' fees, it is important to understand the different issues presented in *Zahn v. International Paper,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) and *Snyder* and how this distinction relates to the amended section 1367 discussed in *In re Abbott. Zahn* involved a case where the named plaintiffs filed suit against the defendant for discharging pollutants into a stream which eventually destroyed the value of their property. The named plaintiffs independently satisfied the required jurisdictional amount under section 1332, but other members of the potential class could not. Therefore, the federal court could have only decided the merits of the unnamed plaintiffs' claims if it had supplemental jurisdiction over them. 414 U.S. at 292, 94 S.Ct. at 507. The Court held that since the law in effect at that time required that every individual plaintiff independently establish the jurisdictional limits of section 1332, the plaintiffs that could not do so were properly dismissed for lack of jurisdiction. On the other hand, *Snyder* involved a discussion of two cases. In case No. 109, the plaintiff filed suit, for herself and all others similarly situated, against the board of directors of a company alleging that shares they had sold should have been distributed to all the shareholders instead of only the board. In case No. 117, the plaintiff filed suit against the local gas company, for himself and others living outside the city limits, for illegally collecting a city franchise tax. In both case No. 109 and No. 117, neither of the named plaintiffs could independently establish original jurisdiction. Thus, these plaintiffs, unlike the named plaintiffs in *Zahn,* needed to aggregate the damages sought in order to establish jurisdiction of their *own* claims. Thus, the issue decided in *Snyder* was not an issue of "supplemental" jurisdiction. Instead, original jurisdiction itself was an issue. The holding of the Fifth Circuit in *In re Abbott,* that the amended section 1367 overrules *Zahn,* applies only to the issue of supplemental, not original jurisdiction. (". . . we are persuaded that the individual claims of the *class representatives* met the requisite jurisdictional

amount. We turn now to the question of *supplemental jurisdiction* over the *class members,* confronting *Zahn's* current vitality."). 51 F.3d at 527. In discussing the amended section 1367, the Fifth Circuit held that section 1367(a) vests federal courts with the "power to hear supplemental claims generally" and that power is "limited to [the] exceptions set forth in the statute's second section [1367(b)]." *Id.* at 528. Because class actions are not among the enumerated exceptions, section 1367 statutorily overrules *Zahn's* requirement that each plaintiff must independently satisfy the jurisdictional amount in controversy. *Id.* at 528–29. An important distinction to note, however, is that the amended section 1367(b) only eliminates the need for *every* plaintiff to *independently* establish the amount in controversy requirement of § 1332. Section 1367(b) applies only after a determination has been made that original jurisdiction exists under § 1332 and § 1367(a), and this is the issue discussed in *In re Abbott.* Section 1367(a) still requires that one plaintiff establish original jurisdiction,, that his claim exceeds the jurisdictional amount in controversy of $50,000.00. ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims . . ."). Since the statutory language in the amended section 1367 does not change the requirement that at least one plaintiff establish original jurisdiction, the amended statute did not overrule *Snyder,* and the non-aggregation rule in *Snyder* has not, therefore, been statutorily overruled.

2. Even after *In re Abbott,* Section 1367 still requires that at least one of the named plaintiffs meet the requisite jurisdictional requirement of damages in excess of $50,000.00. *Fountain v. Black,* 876 F.Supp. 1294, 1299 (S.D.Ga.1994). (". . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related . . ."). The Defendants do not appear to contest this issue.

the attorneys' fees should be attributed to the representative plaintiffs. The Defendants maintain that based on *In re Abbott*, statutory attorneys' fees should be attributable to named plaintiffs in putative class actions for jurisdictional purposes. A careful reading of that case, however, reveals that the Defendants' argument is lacking in merit.

In that case, the representative plaintiffs filed suit against Abbott Laboratories, Bristol–Myers Squibb, and Mean Johnson & Company for conspiring to fix infant formula prices. The representative plaintiffs filed suit in a Louisiana state court for themselves and a class of Louisiana customers for violations of state law. The defendants removed the case, alleging that diversity jurisdiction existed because all the attorneys' fees in the case should be attributed to the representative parties.

The defendants claimed that the attorneys' fees should be attributed to the representative parties because Article 595 of the Louisiana Code provides:

[t]he court may allow the *representative parties* their reasonable expenses of litigation, including attorneys' fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class.

*Id.* at 526 (emphasis added). Additionally, the comments contained in the statute stated that:

(a) It is intended in the first paragraph, that the reasonable expenses of litigation allowed the successful *representative parties* is to be paid out of the funds or benefits made available by their efforts.

*Id.* at 526 (emphasis added). The Fifth Circuit agreed, holding that the *statutory language* contained in Article 595 indicated that the *Louisiana legislature* intended that the attorneys' fees be attributed to the representative plaintiff and not distributed on a *pro rata* basis. *Id.* The Court held that "[t]he *plain text* of the first sentence of 595 awards the fees to the *representative parties:* (The

language allowing the "representative parties" their fees is echoed in Comment (a).")" *Id.* at 526 (emphasis added). The Court further noted that *Goldberg's*[3] requirement that attorneys' fees be distributed on a *pro rata* basis is not applicable here because it "sheds little light on the distinct policy choices behind *Louisiana's* decision regarding rights of recovery by class members. That a *state* chooses a set of rules that result in an award in excess of $50,000.00 frustrates no policy in *Zahn*." *Id.* at 527–27 (emphasis added). The Fifth Circuit added that

[s]imply put, *under the law of Louisiana* the *class representatives* were entitled to fees. Their rights of recovery were not created by a judge's summing the discrete rights of class members. The district court applied the *law of Louisiana.* Because it did so, we are persuaded that the individual claims of the class representatives met the requisite jurisdictional amount.

*Id.* at 527 (emphasis added).

Unlike the statute in *In re Abbott*, this Court is faced with a statute, like the district court in *Gilman*, that does not award attorneys' fees exclusively to the *class representatives*. *Gilman*, 896 F.Supp. at 511. In *Gilman*, the Maryland statute provided that "a *buyer* may sue either at law or in equity to recover ... reasonable attorneys' fees." *Id.* at 511. The district court held,

[u]nder the relevant Maryland statute, if the named plaintiff can recover attorneys' fees, so could any similarly situated plaintiff. Nothing particular to the class representative gives him a unique right to recover all of the attorneys' fees generated by the class action. Thus, the total attorneys' fees must be *pro rated* among the thousands of class plaintiffs.

*Id.* at 511.

In the instant case, the Plaintiffs seek attorneys' fees pursuant to section 38.001 of the Texas Civil Practice and Remedies Code Annotated. Section 38.001 provides that "*[a]*

**3.** If *Goldberg's* rule of non-aggregation were no longer the law, the Fifth Circuit would not have needed to discuss the statutory language of section 595 or the legislative intent of the Louisiana legislature. Instead, the Fifth Circuit could have

simply held that *Goldberg* is no longer the law and ended the discussion of the aggregation of attorneys' fees. The Court, however, did not do so.

*person* may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract." (emphasis added). This statute entitles all class members, both the representatives and unnamed plaintiffs, to attorneys' fees if they are successful. There is nothing particular about this statute, unlike the Louisiana statute in *In re Abbott,* indicating that the attorneys' fees should be attributed to the *class representatives.* As the Fifth Circuit emphasized in *In re Abbott,* "[t]hat a state chooses a set of rules that results in an award in excess of $50,000.00 frustrates no policy of *Zahn* ... under the law of Louisiana the *class representatives* were entitled to fees." 51 F.3d at 526–27. If a legislature can decide to attribute attorneys' fees *to* the *class representatives,* they likewise have the ability to *not* attribute the attorneys' fees to the *class representatives* and instead distribute the fees to the *individual members.* Since section 38.001 does not reflect a legislative intent to attribute the fees to the class representatives, this Court is without the authority to re-write the statute to make it do so. Therefore, the anticipated attorneys' fees should be distributed on a *pro rata* basis.[4]

Based on section 38.001, the attorneys' fees in the present case should be distributed on a *pro rata* basis. In their petition filed in state court, the Plaintiffs estimate that the number of class members could exceed 125,000. Thus, even if attorneys' fees of $12,500,000 were awarded, the amount each individual plaintiff would be awarded would be around $100.00. This is far below the minimum $50,000.00 required to establish diversity jurisdiction.

## C. *Punitive Damages*

 In addition to the attorneys' fees, the Defendants assert that the Plaintiffs' punitive damages in the present case should be "counted against each [P]laintiff's required jurisdictional amount." *See Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1333–1335 (5th Cir.1995), *reh'g en banc denied,* 70 F.3d 26 (5th Cir.1995).[5] The Defendants' argument, however, fails for one simple reason, the Plaintiffs did not plead for punitive damages.

Under the Texas Rules of Civil Procedure, the plaintiff's petition may include only the statement that all claims for unliquidated damages are within the jurisdictional limits of the court. Tex.R.Civ.P. 47; Tex.R.Civ.P. 79. The plaintiff may not include the exact amount of money damages sought unless the defendant files a special exception requesting the exact amount of damages claimed. Tex. R.Civ.P. 47. Since Texas law prohibits a plaintiff from specifying damages in his petition, the Fifth Circuit allows him to file an affidavit clarifying jurisdictional questions that his petition leaves open to question. *Asociacion Nacional de Pescadores,* 988 F.2d at 565.

In the present case, the Plaintiffs only seek to pursue class member claims for non-personal injury economic damages. *Plaintiff's Reply* at p. 3. The Plaintiffs' complaint does not contain a request for punitive damages, and the Plaintiffs have consistently disavowed seeking them. *See Plaintiffs' Reply* and *Affidavit of Stephen E. Harrison, II.* Therefore, Defendants' arguments notwith-

---

**4.** In addition to relying on *In re Abbott,* the Defendants have submitted an unpublished opinion by United States District Judge Samuel B. Kent. *Martin v. Ford Motor Co.,* G–96–225 (Aug. 14, 1995). The statute in question in that case, the Deceptive Trade Practices Act ("DTPA"), is not at issue in the instant case. Thus, Judge Kent's holding that the award of attorneys' fees pursuant to the DTPA should be attributed to the class representatives, so as to not frustrate the Texas Legislature's intent to make it easier for consumers to sue malfeasors, is not applicable to the present case. Section 38.001 was not passed, as was the DTPA, to encourage the filing of small dollar value lawsuits by consumers. Section 38.001 would apply if a multi-billion dollar conglomerate brought suit against another company for breach of contract. Thus, the Court is not faced with a situation where the Texas Legislature's intent to encourage consumers to sue malfeasant corporations would be frustrated if the Court failed to award attorneys' fees to the class representatives.

**5.** "Although the panel members have some disagreement regarding the interpretation of Mississippi law, the panel is of the unanimous view that the opinion in this case specifically reflects a result under the Mississippi law of punitive damages and is not to be construed as a comment on any similar case that might arise under the law of any other state."

standing, the Plaintiffs in the present case are not seeking punitive damages. Thus, any amount of potential punitive damages should not be considered by the Court when determining the amount in controversy in this case.

Undaunted with the fact that Plaintiffs have not pled for nor are they seeking punitive damages, the Defendants request that this Court "force" the Plaintiffs to amend their complaint and include a request for punitive damages. The Defendants fail to cite any case law that actually supports this novel proposition. Instead, the Defendants cite two district court cases where the courts refused to certify the plaintiff's case as a class action and made "passing" references to the potential problems of a plaintiff failing to allege a cause of action that they *clearly* were able to pursue. *See Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 607 (S.D.N.Y.1982); *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 274 (D.C.C.) (1990), *appeal dismissed*, 945 F.2d 1188 (D.C.Cir.1991). While the failure to request punitive damages might possibly prevent the certification of the present case as a class action, this is a long way from requiring that the present plaintiffs plead a claim for punitive damages in order to proceed with their lawsuit.[6]

In conclusion, the Defendants have failed to establish that this Court has jurisdiction pursuant to section 1332. The damages in the present case are well below the $50,-000.00 required by section 1332. The estimated actual damages per vehicle for each plaintiff/class member is not more than $2,000.00. Further, the attorneys' fees should be attributed to the plaintiffs, both named and unnamed, on a *pro rata* basis. The estimated attorneys' fees in this case are, consequently, insufficient to establish the requisite jurisdictional amount of section 1332. Finally, punitive damages in the present case are either not requested or are alleged to be nothing. Thus, punitive damages cannot be used to establish the jurisdictional amount of $50,000.00. Therefore, the jurisdictional prerequisite that the matter in controversy exceed $50,000.00 is not met, this

case was erroneously removed, and this case must be remanded to the 74th Judicial District, McLennan County, Texas, due to lack of subject matter jurisdiction pursuant to section 1447(c). *See Linton v. Airbus Industrie*, 30 F.3d 592 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 639, 130 L.Ed.2d 545 (1994). Accordingly, it is

**ORDERED** that Plaintiffs' Motion for Remand is **GRANTED**.

---

6. The Court also notes that any person who believes punitive damages are an appropriate reme-dy in the present case can opt out of the class action suit and pursue their own remedy.